S.W. and Joanne W., Plaintiffs

v.

HOLBROOK PUBLIC SCHOOLS, Massachusetts Department of Education, and David P. Driscoll, Commissioner of the Massachusetts Department of Education, Defendants

No. CIV.A.02–10697–GAO.

United States District Court,
D. Massachusetts.

Sept. 20, 2002.

D.L. Wallace, Law Office of D. Luray Wallace, Sharon, MA, for S.W., Joanne W., Plaintiffs.

Elizabeth R. O'Brien Corbo, Kopelman and Paige, P.C., Amy Spector, Assistant Atty General, Office of the Atty. General, Boston, MA, for Holbrook Public Schools, Massachusetts Department of Education, David P. Driscoll, in his official capacity as Commissioner of the Massachusetts Department of Education, Defendants.

## MEMORANDUM AND ORDER

O'TOOLE, District Judge.

The plaintiffs, S.W. and her mother, Joanne W., have brought this suit to compel the readmission of S.W. to the Holbrook Junior–Senior High School, from which she was expelled for allegedly providing drugs to another student. The plaintiffs claim that the defendants violated S.W.'s rights under the Individuals with Disabilities Education Act ("IDEA"), the Rehabilitation Act, and the due process guarantees of both the Fourteenth Amendment of the United States Constitution and Article X of the Massachusetts Constitution by not allowing her to remain a student at the Holbrook Junior–Senior High School while it was being determined whether S.W. has a learning disability that would make her eligible for IDEA's protections.

There are several pending motions before this Court. First the Holbrook Public Schools moved to dismiss the plaintiffs' complaint (docket no. 10). The state defendants, the Massachusetts Department of Education and its Commissioner, responded to the Holbrook Public Schools' motion with a motion for judgment on the pleadings (docket no. 17). The plaintiffs then filed a cross-motion for judgment on the pleadings and for a preliminary injunction (docket no. 21). Finally, the Holbrook Public Schools also filed a motion for judgment on the pleadings (docket no. 23).

As will be discussed in greater detail below, the plaintiffs have pled sufficient facts to overcome the defendants' motions on their claim under the IDEA, but not as to the other claims. The defendants' motions for judgment on the pleadings are therefore denied in part and granted in part. The plaintiffs' motion for judgment on the pleadings and for a preliminary injunction is denied. The motion by the Holbrook Public Schools to dismiss on exhaustion grounds is denied.

### A. *Summary of Facts*

In August 2000, S.W. entered the Holbrook Public Schools as a ninth grade student at the Junior–Senior High School. A notation in S.W.'s health record from her prior school indicated that she was taking medication at home for attention deficit disorder. During her first year (2000–2001) in the Holbrook Public Schools, S.W. failed all her classes. Staff from the school "met to discuss [S.W.'s] educational difficulties, but did not refer her for a special needs evaluation in response to her problems." Compl. ¶ 9.

Early in her second year at the Junior–Senior High School, on October 24, 2001, S.W. was suspended for allegedly giving or selling drugs to at least one other student. Earlier that day, the school nurse had treated a student for an elevated pulse and other symptoms. *See* R. at 3, ¶ 8. When the nurse inquired into the cause of the medical problems, other students at the school informed her that S.W. had distributed some "blue pills" to one or more students, including the student with the medical problems. *Id.* When school staff questioned S.W. about the alleged incident, she denied the allegations.

On November 7, 2001, an expulsion hearing was held, attended by S.W., her mother, the school nurse, and the vice principal. At the hearing, the school pre-

sented the evidence on which it had based its decision to expel S.W., including the statements of some unnamed students who had claimed that S.W. was giving drugs to other students in the school. After the hearing, by a letter dated November 9, 2001, the school notified S.W. and her parents that S.W. was expelled from the Junior–Senior High School. The letter also stated that S.W. could return to the school in September 2002, provided that she took and passed a drug test and completed a drug treatment program. R. at 4, ¶¶ 12, 15. S.W. insists that the conditions are inappropriate because she does not have a drug problem.

The plaintiffs appealed the expulsion to the Superintendent of the Holbrook Public Schools, and a hearing was held by the Superintendent on December 6, 2001. According to notes from that hearing, the Superintendent, the Director of Special Education, the Assistant Principal, a guidance counselor from the Junior–Senior High School, the Superintendent's administrative assistant, the school nurse, the plaintiffs, and the plaintiffs' attorney were present. At the hearing, S.W.'s attorney was permitted to question the nurse, who testified that she had treated a student with a "medical situation." *See* R. at 147. She further testified that when she had inquired into the cause of the student's medical problems, she was informed by one or more other students that S.W. had distributed pills to the student who now required medical attention. *Id.* The Superintendent ultimately upheld the school's decision to expel S.W.

Also in December 2001, S.W.'s attorney filed a request for a hearing with the Massachusetts Department of Education, Bureau of Special Education Appeals ("BSEA"), arguing that the school had knowledge that S.W. had a disability and had expelled her in violation of the protections afforded to children with disabilities under the IDEA. The request asked the BSEA to declare that: (1) S.W. was entitled to IDEA's procedural protections under 20 U.S.C. § 1415, (2) S.W.'s due process rights were violated by the manner in which she was expelled, (3) S.W. had been denied reasonable accommodation for her disabilities, and (4) the Holbrook Schools had discriminated against S.W. based on her disability. In particular, S.W. sought an order that she be allowed to remain a student at the Junior–Senior High School pending resolution of her claim under the IDEA. The matter was assigned to a Hearing Officer, and a team of Holbrook Public School staff members ("Team") began an evaluation of S.W. to determine whether she had a qualifying learning disability.

The Team determined that S.W. did not have a disability as defined by the IDEA or by state law. On the basis of this determination, the Holbrook Schools asked the Hearing Officer to dismiss the proceedings initiated by S.W.'s attorney in December 2001. S.W.'s attorney opposed the motion to dismiss arguing that the Team's determination was appealable, and that while the determination was not finalized, S.W. had a right to "stay put" as a student at the Junior–Senior High School. The Hearing Officer agreed with the Holbrook Schools and dismissed the pending proceedings. Specifically, she held that the Team's finding that S.W. was not eligible for IDEA's protections meant that S.W. had no "stay-put" rights under the statute. The plaintiffs then brought this action challenging the propriety of the Hearing Officer's decision and the actions taken by the defendants as a consequence. The plaintiffs are appealing the Team's determination that S.W. does not have a disability in a separate proceeding now pending before the BSEA.

On September 11, 2002, the Holbrook Schools notified this Court that S.W. has been readmitted to the Junior–Senior High School and is currently attending classes there. During a telephone conference with the parties on September 12, the Holbrook Public Schools indicated that S.W. had been readmitted to the high school because the Holbrook Schools believe that she has met the conditions to readmission set forth in the November 2001 expulsion letter. The parties disagree about the effect of S.W.'s admission to school on the issues presented in this case.

## B. *Discussion*

### 1. *The IDEA Framework*

The IDEA protects and requires assistance for children with disabilities. 20 U.S.C. § 1400(d). For purposes of the IDEA, the term "child with a disability" is defined as a child—

(i) with mental retardation, hearing impairments (including deafness), speech or language impairments, visual impairments (including blindness), serious emotional disturbance ..., orthopedic impairments, autism, traumatic brain injury, other health impairments, or specific learning disabilities; and

(ii) who, by reason thereof, needs special education and related services.

20 U.S.C. § 1401(3)(A).

There are two IDEA protections relating to disciplinary actions that are particularly relevant to this case. First, the statute provides that when a school wants to discipline a child with a disability, the school must first conduct a "manifestation" hearing. *See* 20 U.S.C. § 1415(k)(4). The goal of the manifestation hearing is to determine whether the conduct for which the child is being disciplined was a result of or affected by the student's disability. *See id.;* 34 C.F.R. § 300.523. If the school determines that the behavior was not a manifestation of the child's disability, then the school may proceed to discipline the child as it would any other non-disabled student. *See* 20 U.S.C. § 1415(k)(5). If the school determines that the behavior was connected to the child's disability, then the discipline imposed must comply with other IDEA rules and regulations. *See* 20 U.S.C. § 1415(k)(1)-(2).

The second relevant IDEA protection is the child's right to maintain her current educational placement while the school evaluates the child's problematic behavior. *See* 20 U.S.C. § 1415(j). The IDEA provides that "during the pendency of any proceedings conducted pursuant to [20 U.S.C. § 1415], unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of such child." *Id.* This right is often referred to as the right to "stay put." *See Verhoeven v. Brunswick Sch. Comm.,* 207 F.3d 1, 3 (1st Cir.1999).

These rights may apply to a child who has not formally been found to have a disability. The IDEA provides that:

A child who has not been determined to be eligible for special education and related services ... and who has engaged in behavior that violated any rule or code of conduct of the local educational agency, ... may assert any of the protections provided for in this subchapter if the local educational agency had knowledge ... that the child was a child with a disability before the behavior that precipitated the disciplinary action occurred.

20 U.S.C. § 1415(k)(8)(A). The school is deemed to have had knowledge of the child's disability and its need for special education if one of four circumstances exist:

(i) the parent of the child has expressed concern in writing ... to per-

sonnel of the appropriate educational agency that the child is in need of special education and related services;

(ii) the behavior or performance of the child demonstrates the need for such services; ·

(iii) the parent of the child has requested an evaluation of the child . . .;

(iv) the teacher of the child, or other personnel of the local educational agency, has expressed concern about the behavior or performance of the child to the director of special education of such agency or to the personnel of the agency.

20 U.S.C. § 1415(k)(8)(B). If the school "had knowledge" in one or more of these four ways concerning a student it wishes to expel, then that student may invoke the "stay-put" right while the school determines if the student's misbehavior was a manifestation of the student's learning disability. The plaintiffs suggest that the Holbrook Public Schools "had knowledge" that S.W. had a disability under at least circumstances (ii) and (iv).

The IDEA's implementing regulations further provide that a school will "not be deemed to have knowledge" of a disability if the school has "[c]onducted an evaluation . . . and determined that the child was not a child with a disability" and has "[p]rovided notice to the child's parents of its determination." 34 C.F.R. § 300.527(c)(1)(i), (2).

If the school does not have knowledge that a child requires special education (as of the time of the behavior warranting discipline), and a request for an evaluation is made only after the child has been subjected to discipline, the IDEA provides that "pending the results of the evaluation, the child shall remain in the educational placement determined by school authori-

ties." [1] 20 U.S.C. § 1415(k)(8)(C)(ii). In other words, if a school does not have knowledge of the child's special needs before the occurrence of the behavior that has occasioned disciplinary measures, school authorities may determine where the child ought to be placed while the evaluation is conducted, and the child does not have a "stay-put" right.

### 2. *S.W.'s Right to Stay Put*

█ If the school authorities had knowledge that S.W. had a learning disability at the time she was disciplined, then she had a right to stay put in the Junior–Senior High School while the defendants determined whether her punishable conduct was a manifestation of that disability. At the time the school expelled S.W., it appears that the Holbrook Public Schools knew two objective facts: (1) that S.W. had failed all of her classes the previous year, and (2) that S.W.'s health record contained the notation (dated January 2000) that she took medication at home for attention deficit disorder. Although there could be a variety of reasons why a student would fail all her classes, the possibility that she has a learning disability would be one of them. *See Richard V. v. City of Medford,* 924 F.Supp. 320, 322 (D.Mass.1996) (student's "abysmal academic record, consisting of failing grades in a number of classes . . . established a likelihood of success on his claim" that the school should have referred him for an evaluation). The complaint alleges that S.W.'s teachers held a meeting in the spring of 2001 to discuss her academic difficulties. No further details are alleged. The plaintiffs suggest that the teachers may have discussed their opinions about whether S.W. demonstrated a need for special education services. Drawing all

---

**1.** In this case, the "educational placement determined by school authorities" was expulsion from the Holbrook Junior–Senior High School and enrollment in the Evening Academy.

inferences in favor of S.W., these allegations are sufficient (barely) to state a claim that the defendants "had knowledge" that S.W. had a disability at the time they decided to expel her under either the second or fourth prongs of the "basis of knowledge" framework in 20 U.S.C. § 1415(k)(8)(B), so that the complaint adequately alleges a violation of S.W.'s "stay-put" rights.

The defendants argue that any basis of knowledge the school might have had at the time it expelled S.W. in October dissolved in March 2002, when the Team determined that S.W. does *not* have a disability. Once the school obtained the Team's report, the defendants argue, the school qualified for the exception set forth in 34 C.F.R. § 300.527(c). As a result, the defendants believe that any obligation the Holbrook Public Schools had to allow S.W. to stay in the Junior–Senior High School ended once the Team completed its evaluation. The Hearing Officer appears to have adopted the same view when she dismissed S.W.'s "stay-put" request.

The problem with the defendants' argument is that the Team's determination that S.W. does not have a learning disability is not final, but is itself the subject of an appeal in a separate proceeding still pending before the BSEA. The "stay-put" right created in 20 U.S.C. § 1415(j) expressly runs until "all" proceedings have been completed. The First Circuit has made clear that this right includes proceedings which extend beyond the initial Hearing Officer's rulings. *See Verhoeven*, 207 F.3d at 6 ("[s]ubsection 1415(j) provides for 'stay put' placement throughout both the administrative and judicial proceedings . . . ."). Since the no-disability determination is not final, S.W.'s "stay-put" right is not necessarily extinguished by the first-level decision that she does not have a learning disability.

Under the exception spelled out in the IDEA regulations, school authorities are not deemed to have knowledge that the child has a disability if they have conducted an evaluation before the child is disciplined. *See* 34 C.F.R. § 300.527(c). The defendants' argument that an evaluation that is conducted after the imposition of discipline should also qualify for this exemption is unconvincing. The language of the regulation itself indicates that a school's knowledge should be measured as of the date of the child's misbehavior. The exception is phrased in the past tense; literally, it only refers to cases where the school had conducted an evaluation before the student engaged in the behavior that occasioned the disciplinary action.

Moreover, the plaintiffs make a persuasive argument that reading the regulation to permit an after-the-fact conclusion that the child has no disability would run counter to the recognized goal of the IDEA to prevent schools from acting unilaterally to change a disabled student's educational placement. *See Honig v. Doe*, 484 U.S. 305, 321, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988).

### 3. *Mootness*

The Holbrook Schools contend that S.W.'s recent readmission to the Holbrook Junior–Senior High School renders the "stay-put" issue moot. This is only partially correct. Now that S.W. attends the Junior–Senior High School, there is no longer need for injunctive relief compelling that result. It is not clear at this stage, however, whether the plaintiffs may be entitled to some other form of relief for any past violation of S.W.'s "stay-put" rights. In the past, the First Circuit has held that absent "exigent circumstances" a plaintiff cannot seek a damages remedy under 20 U.S.C. § 1415 (then called the Education for All Handicapped Children

Act). *See Colin K. v. Schmidt,* 715 F.2d 1, 10 (1st Cir.1983); *see also Doe v. Anrig,* 692 F.2d 800, 811–12 (1st Cir.1982). Since these decisions, Congress has amended the IDEA several times, and the availability of damages under the IDEA is, at least in this Circuit, an unresolved issue. *See Weber v. Cranston Sch. Comm.,* 212 F.3d 41, 53 n. 13 (1st Cir.2000) (declining to reach the issue of whether damages are available for a violation of IDEA). Recent decisions from other circuits indicate that while general and punitive damage awards are not permitted by the IDEA, other equitable remedies may be possible. *See e.g., Sellers v. Sch. Bd. of Manassas,* 141 F.3d 524, 527 (4th Cir.1998) (holding that IDEA plaintiff cannot recover tort-like damages); *Hoekstra v. Indep. Sch. Dist., No. 283,* 103 F.3d 624, 625–26 (8th Cir. 1996) (finding that an IDEA plaintiff may be entitled to compensatory services or reimbursement for such services, but not to general and punitive damages); *Hall v. Knott County Bd. of Educ.,* 941 F.2d 402, 407 (6th Cir.1991) (holding that when a school system fails to provide special education or related services, student is entitled to compensatory education or reimbursement for past services). Since the plaintiffs' complaint only makes a generalized claim for damages and for any appropriate equitable relief, and because the parties have not briefed the issue, it is not appropriate at this point to determine conclusively that the plaintiffs' IDEA claim was rendered moot when S.W. was readmitted to the Holbrook Junior–Senior High School.

### 4. *Exhaustion*

■ The Holbrook School's first motion sought dismissal of this action on the ground that the plaintiffs had failed to exhaust their administrative remedies before filing suit. This argument is without merit. The question whether S.W. qualifies as a child with a disability so as to entitle her to the protection of the IDEA is currently the subject of pending administrative proceedings and is not ripe for consideration here. However, the question whether S.W. was entitled to "stay-put" rights was finally resolved at the administrative level by the BSEA's dismissal, following the hearing officer's decision of S.W.'s appeal addressed to that issue.

### 5. *Rehabilitation Act Claim*

■ The plaintiffs' complaint does not state a viable claim under the Rehabilitation Act. The Act provides that "[n]o otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in ... any program or activity receiving Federal financial assistance ...." 29 U.S.C. § 794. The Act defines "disability" as a physical or mental impairment which either creates "a substantial impediment to employment" or "substantially limits one or more major life activities." 29 U.S.C. § 705(9). To bring an action under the Rehabilitation Act against a school for failing to provide adequate services to a child with a learning disability, a plaintiff must allege "something more than a mere failure to provide the 'free appropriate education'" required by the IDEA. *Monahan v. Nebraska,* 687 F.2d 1164, 1170 (8th Cir.1982). The plaintiff must allege that the school acted with "bad faith or gross misjudgment" in order to state a valid claim for discrimination under the Rehabilitation Act. *Id.* at 1171. *See also Colin K.,* 715 F.2d at 10 (finding that plaintiffs could not bring Rehabilitation Act discrimination claim where they did not allege that the defendants "have any particular animus towards learning disabled children"). The plaintiffs' allegations in this case do not state a claim under the Rehabilitation Act.

### 6. *Due Process Claim*

 The plaintiffs also have not adequately pled due process claims under the federal and state constitutions. A student's procedural rights when being expelled are limited. As the Seventh Circuit recently explained, "To comport with due process, expulsion procedures must provide the student with a meaningful opportunity to be heard. The proceedings need not, however, take the form of a judicial or quasi-judicial trial. As long as the student is given notice of the charges against him, notice of the time of the hearing and a full opportunity to be heard, the expulsion procedures do not offend due process requirements." *Remer v. Burlington Area Sch. Dist.*, 286 F.3d 1007, 1010–11 (7th Cir. 2002) (citations and internal quotations omitted). Here, it is undisputed that S.W. was given written notification of the expulsion hearing to hear the school present its evidence, and that she was permitted to attend the hearing with her parent and a lawyer to tell her version of events. The plaintiffs' chief objection seems to be the hearsay nature of the schools' evidence and the fact that the school did not specifically identify the student or students to whom S.W. had allegedly given drugs. These facts would not establish a violation of the due process clauses of either the federal or the state constitution. *See Beauchamp v. De Abadia*, 779 F.2d 773, 775–76 (1st Cir.1985) (admission and use of hearsay evidence during an administrative proceeding is permitted under due process clause).

### C. *Conclusion*

The Holbrook Public Schools' motion to dismiss (docket no. 10) is DENIED.

The Massachusetts Department of Education's motion for judgment on the pleadings and the Holbrook Public School's motion for judgment on the pleadings (docket nos. 17 and 23) are DENIED as to the first cause of action in the complaint (the IDEA claim), and are GRANTED as to the second and third causes of action stated in the complaint (the Rehabilitation Act and due process claims).

The plaintiffs' motion for a preliminary injunction (docket no. 21) is DENIED as moot, and their motion for judgment on the pleadings (docket no. 21) is DENIED.

It is SO ORDERED.