2007-NMCA-150

172 P.3d 185

Ted **SCANLON** and **Ruth Scanlon–Christopher**, as **Next Best Friends** and **Personal Representatives** of **Jarrett Scanlon, a Minor, Petitioners–Appellants,**

v.

**LAS CRUCES PUBLIC SCHOOLS, Respondent–Appellee.**

No. 26,334.

Court of Appeals of New Mexico.

Oct. 1, 2007.

C.J. McElhinney, Las Cruces, NM, for Appellants.

Holt Babington Mynatt P.C., Matthew P. Holt, Las Cruces, NM, for Appellee.

## OPINION

FRY, Judge.

{1} Jarrett Scanlon was a student at Las Cruces High School when he was suspended for one year for possessing marijuana and a weapon on school property. Jarrett's parents, Ted Scanlon and Ruth Scanlon–Christopher, appeal his suspension on his behalf, claiming: (1) that the school hearing authority should not have considered evidence obtained in violation of Jarrett's federal and state constitutional rights to be free from unreasonable searches and seizures, and (2) that Jarrett's right to procedural due process was violated when he was not permitted to cross-examine the students who told school officials that the marijuana they were smoking belonged to Jarrett. We hold that the hearing authority properly considered the evidence presented to it, because even if the evidence was seized in violation of Jarrett's constitutional rights, the exclusionary rule does not apply in school disciplinary hearings. We also hold that the hearing authority could base its decision on the testimony of the assistant principal who investigated the incident, since due process does not require that Jarrett be permitted to cross-examine the students who gave the assistant principal his information. Accordingly, we affirm the district court.

## BACKGROUND

{2} After a school groundskeeper reported that he saw four people smoking something inside Jarrett's car, which was parked in the school parking lot, school employees searched the car and found marijuana in the passenger compartment and a decorative sword in the trunk. Jarrett ran away from the school employees, but the other students who had been in the car were taken to Assistant Principal Carlos Romero's office, where they stated that the marijuana belonged to Jarrett and that all four of them had smoked it.

{3} Jarrett and his parents were given notice that the Las Cruces Public Schools (LCPS) sought to suspend him for a one-year period. At the suspension hearing, the assistant principal testified about what the three other students told him. The students did not testify. The three-member LCPS hearing authority found that Jarrett had violated school policies against possessing drugs and weapons, and suspended him for one year. Jarrett was offered the opportunity to enroll in an alternative school in the Las Cruces Public Schools system. The Scanlons appealed the hearing authority's decision to the superintendent, who affirmed the suspension.

{4} The Scanlons filed a petition for a writ of certiorari with the district court pursuant to Rule 1–075 NMRA. Before the district court, the Scanlons argued that Jarrett was denied procedural due process in the suspension hearing because he was not permitted to confront his student accusers. They also argued that school officials did not have reasonable suspicion to search the trunk of Jarrett's car, and that even if they did have reasonable suspicion, they could not search the trunk without either a warrant or exigent circumstances. The district court determined that due process did not require LCPS to permit Jarrett to cross-examine the students. The district court then determined that school officials lacked "probable cause" to search the trunk of Jarrett's car, despite the fact that both parties had argued that the proper standard is whether the officials had "reasonable suspicion" that the search would uncover evidence that the student violated the law or school rules.

{5} LCPS appealed the district court's use of the incorrect legal standard, and the Scanlons filed a cross-appeal raising several additional claims of error. This Court assigned the case to the summary calendar pursuant to Rule 12–210(D) NMRA. Our notice of proposed summary disposition proposed to reverse and remand for the district court to apply the reasonable suspicion standard to

the search of the trunk. We made no mention of the arguments the Scanlons raised in their cross-appeal. Neither party filed a memorandum in opposition to the notice of our proposed disposition; consequently, we issued a memorandum opinion reversing the district court for the reasons given in the notice. On remand, the district court concluded that school officials had reasonable suspicion to search the trunk of Jarrett's car, and affirmed the decision of the LCPS hearing authority to suspend Jarrett. The Scanlons appeal.

## DISCUSSION

### The Scanlons' Failure to File a Memorandum in Opposition in the Prior Appeal

■ {6} As a threshold matter, we must decide whether the Scanlons' claims are properly before us. The issues the Scanlons raise in this appeal are essentially the same as those raised in their earlier cross-appeal. LCPS suggests that-with the exception of the Scanlons' argument that there was no reasonable suspicion to search the trunk of Jarrett's car-these claims were "implicitly rejected" when this Court issued its order reversing the district court for its improper use of the probable cause standard. Therefore, LCPS argues, the law of the case doctrine requires us to find that the law applied in the first appeal is binding in the second appeal, and that the Scanlons cannot reargue these claims of error. We do not agree.

■ {7} Under the law of the case doctrine, "[i]f an appellate court has considered and passed upon a question of law and remanded the case for further proceedings, the legal question so resolved will not be determined in a different manner on a subsequent appeal." *Ute Park Summer Homes Ass'n v. Maxwell Land Grant Co.,* 83 N.M. 558, 560, 494 P.2d 971, 973 (1972). Our notice of proposed disposition did not reflect any evidence that this Court "considered and passed upon" the issues raised by the Scanlons in their cross-appeal, since it made no mention of the issues at all. *Id.* Facing such a notice, the Scanlons might reasonably have believed that this Court wished to reserve judgment on the remaining issues until the district court applied the correct law. While it would have been advisable for the Scanlons to file a

memorandum in opposition to the proposed disposition in order to seek clarification, under the circumstances of this case, we will not penalize the Scanlons for the ambiguity of our notice. *See State v. Breit,* 1996-NMSC-067, ¶ 12, 122 N.M. 655, 930 P.2d 792 (noting that application of the doctrine of law of the case is discretionary with the court and stating that an appellate court "will not apply this doctrine to perpetuate an obvious injustice"). Accordingly, we address any of the Scanlons' claims on appeal that were preserved below.

### The Admissibility of Evidence Obtained During the Search of Jarrett's Vehicle on School Grounds

■ {8} Relying on *State v. Gomez,* 1997-NMSC-006, 122 N.M. 777, 932 P.2d 1, the Scanlons argue that school officials could not search Jarrett's vehicle without a warrant unless there were exigent circumstances. In *Gomez,* our Supreme Court departed from federal precedent to hold that under Article II, Section 10 of the New Mexico Constitution, a warrantless search of an automobile requires both probable cause and a particularized showing of exigent circumstances. *See Gomez,* 1997-NMSC-006, ¶ 39. Recognizing that when a search is conducted by school officials on school grounds, the standard is the lower standard of reasonable suspicion, *see In re Josue T.,* 1999-NMCA-115, ¶¶ 15, 23, 128 N.M. 56, 989 P.2d 431, the Scanlons argue that a warrantless search of an automobile by school officials must be justified by both reasonable suspicion and exigent circumstances.

{9} Even if the Scanlons are correct, the constitutional violation would affect Jarrett's suspension only if the evidence obtained during the search could not be considered as a basis for the hearing authority's disciplinary action. Because we conclude that the exclusionary rule does not apply in school disciplinary hearings, any violation of Jarrett's constitutional rights would not alter the evidence before the hearing authority. As a consequence, we need not address the Scanlons' claim that the search violated Jarrett's rights under Article II, Section 10 of the New Mexico Constitution.

{10} We conclude that the exclusionary rule does not apply in school disciplinary proceedings because the purpose of the exclusionary rule is not advanced in such proceedings. We first consider the purpose of the rule under the federal constitution and then discuss the somewhat different purpose served by the rule under the state constitution.

{11} Under the federal constitution, the exclusionary rule is not a personal constitutional right, but is instead a prudential rule intended to deter governmental actors from committing future Fourth Amendment violations. *See Withrow v. Williams,* 507 U.S. 680, 686, 113 S.Ct. 1745, 123 L.Ed.2d 407 (1993). Because the United States Supreme Court has found that the exclusionary rule is not a constitutional right and has declined to extend its use to civil proceedings, *see Pa. Bd. of Prob. & Parole v. Scott,* 524 U.S. 357, 362–69, 118 S.Ct. 2014, 141 L.Ed.2d 344 (1998) (holding that the exclusionary rule does not apply in parole revocation proceedings because the deterrent effect would be minimal), Jarrett has no federal constitutional right to exclude from his disciplinary hearing any evidence found during an illegal search by school officials. *See Thompson v. Carthage Sch. Dist.,* 87 F.3d 979, 981–82 (8th Cir.1996) (holding that the exclusionary rule does not apply in a high school disciplinary hearing).

{12} In contrast, the New Mexico Supreme Court has interpreted Article II, Section 10 of the New Mexico Constitution to imply a personal constitutional right to exclude illegally obtained evidence. *See State v. Gutierrez,* 116 N.M. 431, 444–47, 863 P.2d 1052, 1065–68 (1993). Under our state constitution, the exclusionary rule is not based on a policy of deterring official misconduct, but is instead intended to safeguard the right to be protected from unreasonable searches and seizures by putting the parties in the same position they would have been in had the constitutional violation not occurred. *Id.* at 446, 863 P.2d at 1067. Whether the exclusionary rule applies to a school disciplinary proceeding is a question of first impression that we review de novo. *See State v. Marq-*

*uart,* 1997–NMCA–090, ¶ 7, 123 N.M. 809, 945 P.2d 1027.

{13} *Gutierrez* explains that while Article II, Section 10 of the New Mexico Constitution "expresses the fundamental notion that every person in this state is entitled to be free from unwarranted governmental intrusions," its core application is in "the context of criminal prosecution brought to bear after violation of that right." *Gutierrez,* 116 N.M. at 444, 863 P.2d at 1065. Nonetheless, since our Supreme Court decided *Gutierrez,* New Mexico has recognized that the exclusionary rule applies to at least one type of proceeding that is not a criminal trial. *See Marquart,* 1997–NMCA–090, ¶ 17. In *Marquart,* this Court held that illegally obtained evidence must be excluded from probation revocation hearings. *Id.* Although probation revocation hearings are not criminal trials, and the "full panoply of rights possessed by a defendant in a criminal prosecution do not apply," *id.* ¶ 9, we note that the liberty interest at stake in a probation revocation hearing is the same as the liberty interest at stake in a criminal proceeding. In either case, someone who is entitled to be free may be imprisoned, depending on the outcome. Thus, a probation revocation proceeding is closely related to the core purpose of preventing the use of illegally obtained evidence against a person accused of a crime.

{14} The interests at stake in a school disciplinary hearing are of a different sort altogether. While a child's interest in continuing his education at the school where he is currently enrolled is significant, it is unrelated to the liberty interest at stake in a criminal trial or in a probation revocation proceeding. Because school disciplinary proceedings are so far removed from the context of criminal prosecution brought to bear after violation of the right to be free from unwarranted governmental intrusion, we hold that they are not the intended context for the protections provided by New Mexico's constitutional exclusionary rule. *See T.M.M. ex rel. D.L.M. v. Lake Oswego Sch. Dist.,* 198 Or.App. 572, 108 P.3d 1211, 1213–17 (2005) (holding that while the Oregon state constitution, unlike the federal constitution, provides a personal constitutional right to the exclu-

sionary rule, the rule does not apply in school disciplinary hearings). Therefore, the LCPS hearing authority properly considered the evidence seized from Jarrett's car.

## Procedural Due Process in the School Disciplinary Hearing

{15} The Scanlons argue that Jarrett was denied procedural due process in the disciplinary proceedings against him because LCPS neither named the students who informed school officials that the marijuana belonged to Jarrett nor produced those students as witnesses at Jarrett's long-term suspension hearing. Instead, the students' statements were summarized by the assistant principal. Jarrett's attorney was permitted to cross-examine the assistant principal about the students' motivation to put the blame on Jarrett, who had run off and was not there to defend himself or to contradict them. We hold that these procedures were constitutionally sufficient.

{16} The Fourteenth Amendment to the United States Constitution prohibits state actors from depriving "any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. There is no dispute that Jarrett has a property interest in continuing his public education, see *Goss v. Lopez,* 419 U.S. 565, 572–74, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975), and LCPS does not argue that its offer of an alternative school setting remedied any deprivation of that interest. The minimum due process requirements for a short-term suspension from school include "oral or written notice of the charges ... and, if [the student] denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story." *Id.* at 581, 95 S.Ct. 729. Since the LCPS sought to impose a long-term suspension, Jarrett was given significantly greater procedural protections than the minimum requirements for a short-term suspension established in *Goss:* he was given notice of the hearing, the right to have an attorney, the right to cross-examine the witnesses who testified at the hearing, and the right to present evidence on his own behalf. Nevertheless, he argues that because LCPS did not disclose the names of his

student accusers and because he was unable to confront those students, he was denied due process under both the Fourteenth Amendment to the United States Constitution and Article II, Section 18 of the New Mexico Constitution. We review these constitutional claims de novo. *State v. DeGraff,* 2006–NMSC–011, ¶ 6, 139 N.M. 211, 131 P.3d 61.

{17} "The requirements of due process are not technical, and no particular form of procedure is necessary for protecting substantial rights." *United Nuclear Corp. v. Gen. Atomic Co.,* 93 N.M. 105, 123, 597 P.2d 290, 308 (1979). To determine whether the administrative procedures afforded Jarrett comported with the Fourteenth Amendment, we apply the balancing test established in *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Under *Mathews,* the factors this Court must weigh are as follows:

> [f]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335, 96 S.Ct. 893.

{18} Under the first *Mathews* factor, Jarrett has an important interest in continuing his education. However, because LCPS offered him the opportunity to attend high school in an alternative setting, his interest is considerably lower than if he had been entirely deprived of the right to a free public education for the period of the suspension. Therefore, while this factor weighs in Jarrett's favor, it does so only slightly.

{19} The second factor requires us to consider the risk of erroneous deprivation that is caused by refusing to let Jarrett know who his student accusers are and by refusing to allow him to confront them and the probable value of additional safeguards. The risk of error in this case is relatively low. Because

Jarrett was in the car with three other students when school employees approached them, Jarrett can hardly claim that he does not know who his accusers are, even if LCPS has refused to tell him. The fact that he was not allowed to confront them at the hearing creates a greater risk of error, but, as other courts who address this question have noted, the risk is lower in the school disciplinary context than it would be in other settings.

> The value of cross-examining student witnesses in school disciplinary cases, ... is somewhat muted by the fact that the veracity of a student account of misconduct by another student is initially assessed by a school administrator ... who has, or has available to him, a particularized knowledge of the [accusing] student's trustworthiness.

*Newsome v. Batavia Local Sch. Dist.*, 842 F.2d 920, 924 (6th Cir.1988). Nonetheless, because we believe that cross-examination is the "principal means by which the believability of a witness and the truth of his testimony are tested," *Davis v. Alaska*, 415 U.S. 308, 316, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), we conclude that this factor weighs slightly in Jarrett's favor.

{20} It is the third *Mathews* factor that is dispositive of this issue, however. Under the third factor, we weigh the burden that the practice of allowing cross-examination of student witnesses would place on LCPS. The burdens on a school district of having to hold trial-like disciplinary hearings in which they must employ the technical rules of evidence are significant, and could potentially have serious consequences both for school administration and for the safety of the student body. Accordingly, we conclude that the burdens imposed by a requirement that all student accusers must testify at disciplinary hearings and must be subject to cross-examination would significantly outweigh the benefits to the accused student.

{21} The technical rules of evidence generally do not apply to administrative hearings. *See Archuleta v. Santa Fe Police Dep't ex rel. City of Santa Fe*, 2005–NMSC–006, ¶ 21, 137 N.M. 161, 108 P.3d 1019. This is for the purpose of both "expediting administrative procedure," *Ferguson–Steere Motor Co. v.*

*State Corp. Comm'n*, 63 N.M. 137, 143, 314 P.2d 894, 898 (1957), and avoiding the costs and complexity of adversarial litigation. *B.S. ex rel. Schneider v. Bd. of Sch. Trs., Fort Wayne Comty. Sch.*, 255 F.Supp.2d 891, 900–01 (N.D.Ind.2003) (mem. & order). In addition to these considerations of cost and efficiency, administrative bodies made up of school officials are simply not well suited to hold formal, technical trial-like proceedings:

> To saddle [school administrators] with the burden of overseeing the process of cross-examination (and the innumerable objections that are raised to the form and content of cross-examination) is to require of them that which they are ill-equipped to perform. The detriment that will accrue to the educational process in general by diverting school board members' and school administrators' attention from their primary responsibilities in overseeing the educational process to learning and applying the common law rules of evidence simply outweighs the ... benefit that will accrue to the fact-finding process by allowing cross-examination.

*Newsome*, 842 F.2d at 926.

{22} Furthermore, in the context of school disciplinary hearings, there are particular reasons for refusing to require the appearance before the accused student of other students who have informed the administration about the accused student's misconduct. Courts have expressed concern that if students know they will be required to face a peer who is in trouble at school-and likely at home as well-based on information they have supplied, they may be "understandably reluctant to come forward with information" in the first place, thereby hindering the school's ability to enforce its rules. *B.S. ex rel. Schneider*, 255 F.Supp.2d at 901 (internal quotation marks and citation omitted); *see also Newsome*, 842 F.2d at 925. Students who do choose to notify school authorities of misconduct may face "ostracism at best and perhaps physical reprisals." *Id.* Therefore, we agree with the majority of courts who have addressed this matter that the Fourteenth Amendment permits the rights at stake in a school disciplinary hearing to be determined on the hearsay testimony of the

school administrators who investigated the incident. *See, e.g., id.; Brewer ex rel. Dreyfus v. Austin Indep. Sch. Dist.*, 779 F.2d 260, 263 (5th Cir.1985); *Boykins v. Fairfield Bd. of Educ.*, 492 F.2d 697, 700–02 (5th Cir.1974); *S.W. v. Holbrook Pub. Sch.*, 221 F.Supp.2d 222, 229 (D.Mass.2002); *B.S. ex rel. Schneider*, 255 F.Supp.2d at 901; *Graham v. Knutzen*, 351 F.Supp. 642, 669 (D.Neb.1972).

{23} The Scanlons argue that even if due process under the Fourteenth Amendment does not require confrontation of student accusers in a disciplinary hearing, the New Mexico Constitution does impose such a requirement. This argument was preserved below as mandated by *Gomez*. However, we are not convinced by the Scanlons' arguments regarding the need for greater due process protections under the New Mexico Constitution. Citing to *State v. Javier M.*, 2001–NMSC–030, 131 N.M. 1, 33 P.3d 1, the Scanlons claim that because New Mexico has provided greater protections for minors who are subject to custodial interrogations than the federal constitution requires, we should also provide minors with increased protections during school disciplinary proceedings by allowing them to cross-examine the students who provided the administration with information about the minor's misconduct. We do not see how one proposition follows the other, and we conclude that the procedural protections afforded Jarrett at his long-term suspension hearing met the requirements of due process under Article II, Section 18 of the New Mexico Constitution.

**CONCLUSION**

{24} We hold that the exclusionary rule does not apply in school disciplinary proceedings, and we therefore uphold the hearing authority's consideration of the marijuana and the sword found in Jarrett's car, without reaching the issue of whether that evidence was obtained in violation of Jarrett's constitutional rights. We also conclude that under both the federal and state constitutions, due process permitted the school authorities in this case to base their disciplinary decisions on the hearsay statements of the school officials who investigated the alleged misconduct, and that the accused student had no constitutional right to cross-examine the students who provided the school officials with their information. Accordingly, we affirm the decision of the district court.

{25} **IT IS SO ORDERED.**

WE CONCUR: CELIA FOY CASTILLO and MICHAEL E. VIGIL, Judges.