2004-NMCA-044

89 P.3d 680

Robert DIXON, Petitioner–Appellee,

v.

STATE of New Mexico TAXATION AND REVENUE DEPARTMENT, MOTOR VEHICLE DIVISION, Respondent–Appellant.

Andrew Strickland, Petitioner–Appellee,

v.

State of New Mexico Taxation and Revenue Department, Motor Vehicle Division, Respondent–Appellant.

Nos. 22,787, 22,827.

Court of Appeals of New Mexico.

Feb. 17, 2004.

Terrence R. Kamm, Kamm & McConnell, L.L.C., Raton, NM, for Appellee Dixon.

Patricia Madrid, Attorney General, Julia Belles, Special Assistant Attorney General, Santa Fe, NM, for Appellant.

*OPINION*

CASTILLO, Judge.

{1} These consolidated cases originate from administrative proceedings before the New Mexico Taxation and Revenue Department, Motor Vehicle Division (MVD). In Robert Dixon's case, an MVD hearing officer ruled that the hearing on a notice of revocation of Dixon's driver's license was timely and revoked it under the Implied Consent Act, NMSA 1978, §§ 66–8–105 to –112 (1978, as amended through 2003) (ICA). In Andrew Strickland's case, MVD denied his application for a limited license under NMSA 1978, § 66–5–35 (2003). Both Dixon and Strickland appealed to the district court, which reversed MVD. MVD then filed direct appeals to this Court. We consolidated these cases because of one common question: In appealing to this Court, should MVD have filed petitions for writ of certiorari, instead of direct appeals? We hold that MVD should have filed petitions for writ of certiorari, as opposed to direct appeals; however, because of the unusual circumstances of these cases, we will treat the direct appeals as properly filed. On the merits, we affirm the district court in Dixon's case and dismiss for lack of a final order in Strickland's case.

## I. PROCEDURE

### A. Administrative Review in District Court

{2} There are two rules of civil procedure governing district court review of administrative decisions or orders: (1) Rule 1–074 NMRA 2003 and (2) Rule 1–075 NMRA 2003. Rule 1–074 governs review from decisions of administrative agencies when "there is a statutory right of review to the district court." Rule 1–074(A). While there are a variety of statutes that allow review by the district court, NMSA 1978, § 39–3–1.1 (1999), provides authority for a great number of these administrative appeals. *See* § 39–3–1.1(A) (governing "judicial review of agency final decisions that are placed under the authority of [Section 39–3–1.1] by specific statutory reference"). Rule 1–075 relates to appeals to district court when there is no statutory authority for the appeal; as a consequence, this rule is not under consideration in this opinion.

### B. Review in This Court

{3} Rule 1–074(T) provides that "[a]n aggrieved party may seek review of an order or

judgment of the district court in accordance with the Rules of Appellate Procedure." The Rules of Appellate Procedure provide two methods for obtaining review of a district court's determination. First, Rule 12–201 NMRA 2003 governs direct appeals from suppression orders and "all other appeals" and provides that such appeals are initiated by filing a notice of appeal. Second, Rule 12–505(A)(1) NMRA 2003 governs review of district court decisions from "administrative appeals pursuant to Rule 1–074 NMRA and Section 39–3–1.1 NMSA 1978." Rule 12–505(A)(1) is consistent with language in Section 39–3–1.1 that directs review of district court decisions by an appellate court to be accomplished "by filing a petition for writ of certiorari" with the appropriate court. Section 39–3–1.1(E). The question here is whether a party should file a notice of appeal or a petition for certiorari when that party is seeking review in this Court of a district court's determination on appeal from an MVD decision revoking a license or denying a limited license.

{4} MVD argues that such review is obtained by filing a notice of appeal. In support of its argument, MVD maintains that Rule 12–505(A)(1) applies only to Rule 1–074 review that is authorized by Section 39–3–1.1. Specifically, MVD contends that district court review of revocations under the ICA is authorized by NMSA 1978, § 66–8–122(G) (1985), and that district court review of denials of a limited license is authorized by Section 66–5–35(G). Neither of these statutes mentions Section 39–3–1.1. MVD therefore concludes that the legislature intended that the Rule 1–074 review in this Court of a district court's determination regarding the ICA or limited licenses be made by direct appeal under Rule 12–201 and not by filing a petition for writ of certiorari under Rule 12–505(A)(1).

{5} Dixon apparently assumes that Rule 1–074 review should be pursued in light of Rule 12–505(A)(1) via a petition for writ of certiorari. Dixon argues that in either case—revocation under the ICA or denial of a limited license—district court review is authorized by Section 39–3–1.1. Dixon relies on language in NMSA 1978, § 66–5–36 (1999),

which states in pertinent part: "A person denied a license or whose license has been canceled, suspended or revoked by the department ... may file an appeal in the district court pursuant to the provisions of Section 39–3–1.1."

▓▓▓ {6} We agree with Dixon. Statutory interpretation is a question of law. *Largo v. Atchison, Topeka & Santa Fe Ry. Co.,* 2002–NMCA–021, ¶ 14, 131 N.M. 621, 41 P.3d 347. In reviewing a statute, this Court's role is to effect the legislature's intent as evidenced by the statute's plain terms and to avoid strained or absurd construction. *State v. Pearson,* 2000–NMCA–102, ¶ 5, 129 N.M. 762, 13 P.3d 980. The first rule of statutory construction is that the plain language of a statute is the primary indicator of legislative intent. *Mem'l Med. Ctr., Inc. v. Tatsch Constr., Inc.,* 2000–NMSC–030, ¶ 27, 129 N.M. 677, 12 P.3d 431. The ICA deals with license revocation. Limited licenses are allowed in certain cases where a license has been revoked or suspended. Section 66–5–35. If the department does not approve the applicant's request for a limited license, the license is considered denied, and the suspension or revocation remains in effect. *Id.* Clearly, the language of Section 66–5–36 applies to license revocations and denials, whether under the ICA or under other statutory authority. Consequently, the Rule 1–074 review in both cases is authorized by Section 39–3–1.1, and any review in this Court is obtained by filing a petition for writ of certiorari.

{7} MVD argues that Sections 66–8–112(G) and 66–5–35(G) have separate language authorizing review by a district court and contain no mention of Section 39–3–1.1; because the specific controls over the general, MVD contends these appeals are not governed by Section 39–3–1.1. We do not read the statutes to preclude application of Section 39–3–1.1; on the contrary, they can be read together harmoniously with Section 66–5–36 to effect the legislature's intent to standardize the method for obtaining judicial review of final decisions of certain administrative agencies. *See Hyden v. N.M. Human Servs. Dep't,* 2000–NMCA–002, ¶¶ 2, 8, 128 N.M. 423, 993 P.2d 740 (noting that Section

39–3–1.1 is "comprehensive administrative appeals legislation materially changing the method by which parties aggrieved by a final decision of certain administrative agencies could seek appellate review" and that Section 39–3–1.1 legislation "sought to simplify and standardize the method for obtaining judicial review of final decisions of certain administrative agencies").

{8} Based on our holding in this case, we do not reach the question regarding the proper procedure under the appellate rules for seeking review of a district court's determination under Rule 1–074 that is not authorized by Section 39–3–1.1. We observe that a petition for writ of certiorari must be filed within twenty days from entry of the final order. Rule 12–505(C) NMRA 2003. Direct appeals must be filed within thirty days from entry of judgment. Rule 12–201(A).

## C. Appeals to This Court in Dixon's and Strickland's Cases

{9} Based on the above analysis, we hold that in Dixon's and Strickland's cases, the proper procedure for seeking review in this Court of the district court decision is by filing a petition for writ of certiorari. Hence, MVD should have pursued its appeals in this manner. In spite of this holding, however, we believe the unique circumstances of these cases dictate that this Court make an exception and nonetheless consider the appeals on the merits. See, e.g., Hyden, 2000–NMCA–002, ¶ 17, 128 N.M. 423, 993 P.2d 740 (exercising discretion to allow parties an extension for time to file petitions for writs of certiorari in light of the case's "unusual circumstances"). In this case, the unusual circumstances are the inconsistencies by this Court in considering Rule 1–074 appeals from MVD. For example, in the memorandum opinion Bobroff v. State Taxation & Revenue Department, No. 21,969 (N.M. Ct.App. filed June 27, 2002), at the calendaring stage, this Court noted that a petition for writ of certiorari was required to appeal license revocation. But when this Court issued the memorandum opinion, the appeal was allowed to proceed, even though it had been directly appealed to this Court. In memorandum

opinions MacLaurin v. State Taxation & Revenue Department, No. 22,236 (N.M. Ct. App. filed July 2, 2001) (considering an appeal from license revocation), and State Taxation & Revenue Department v. Baca, No. 22,671 (N.M. Ct.App. filed February 19, 2002) (same), this Court considered the appeals as direct appeals.

{10} Rule 12–505(C) requires certiorari petitions to be filed within twenty days from entry of the district court's final order. West Gun Club Neighborhood Ass'n v. Extraterritorial Land Use Authority, 2001–NMCA–013, ¶ 3, 130 N.M. 195, 22 P.3d 220, provides that this Court may, at its discretion, elect to treat a notice of appeal as a petition for writ of certiorari if the notice of appeal was filed within twenty days after the district court's final action. In Dixon's case, the district court's final order was filed on November 26, 2001, and the notice of appeal was filed on December 7, 2001. In Strickland's case, the district court's final order was filed on November 29, 2001, and the notice of appeal was filed on December 17, 2001. Both notices of appeal were filed within twenty days of the final order. Because of the unusual circumstances of this case, these notices of appeal will be treated as petitions for writ of certiorari, which we grant.

## II. MERITS

### A. Standard of Review

{11} Having determined that the appeals in these cases will be treated as petitions for writs of certiorari and having decided to grant them, we now apply an administrative standard of review: whether the decision was (1) arbitrary, capricious, or an abuse of discretion; (2) not supported by substantial evidence in the record; or (3) otherwise not in accordance with the law. See Rio Grande Chapter of the Sierra Club v. N.M. Mining Comm'n, 2003–NMSC–005, ¶ 17, 133 N.M. 97, 61 P.3d 806. Although this Court does not substitute its judgment for the fact-finder, it reviews questions of law de novo. Id.

### B. Dixon's Case

{12} The issue in this case is when Dixon received his notice of revocation. The date

of the notice of revocation is important because once a notice is received, a person has a right to have a hearing, if requested, within ninety days of such notice. *See* § 66-8-112(C). If a hearing is not held within the ninety days, the person's license cannot be revoked. *See* § 66-8-112(E)(3), (G). Dixon contends that he received a notice of revocation on the date of his arrest and that a hearing was not held within ninety days. MVD counters that if Dixon did receive a notice of revocation on the date of his arrest, the notice was defective and therefore could not trigger the ninety-day time frame. For this reason, MVD relies on a subsequent notice of revocation to trigger the ninety-day hearing requirement.

### 1. Facts

{13} On September 21, 2000, Dixon was arrested for DWI. On the same day, he consented to a blood test, and a blood test was administered to him. On September 25, 2000, Dixon's attorney sent a letter to MVD with a check for $25.00, wherein he requested a hearing and enclosed a copy of a notice of revocation that had been filled out in part by the arresting officer in September 2000 [hereinafter September NOR]. The September NOR sets forth the arresting officer's statement that he observed Dixon driving, that Dixon failed the field sobriety test, and that Dixon submitted to a blood test. The results of the blood test are not indicated. The bottom of the notice has the line "motor [vehicle] division copy." The officer signed the notice, but the date of service is blank. In the letter, Dixon's attorney states that "it appears that there has not been a revocation complying with the New Mexico Implied Consent Act"; nevertheless, he requests MVD to "please consider this Mr. Dixon's request for a hearing if it is the Department's position that there has been a revocation."

{14} The laboratory analyzed Dixon's blood on September 26, 2000. The results were mailed on September 27, 2000. MVD received the report on or before October 19, 2000. On December 4, 2000, MVD sent Dixon by certified letter a notice of revocation [hereinafter December NOR]. It is not clear

why there was such a time lag between MVD's receipt of the report and the issuance of the December NOR. At the district court hearing, MVD speculated that a clerical error may have been responsible. Dixon received the December NOR on December 8, 2000.

{15} Also on December 8, 2000, MVD sent Dixon a notice of continuance for the hearing. The notice of continuance was presumably based on Dixon's September 25, 2000, request for a hearing, given that this was the only request for a hearing made by Dixon. On December 19, 2000, Dixon's attorney sent another letter to MVD, this time indicating Dixon's confusion about the receipt of a second notice of revocation, as per the December NOR. He also acknowledged receipt of a setting for the hearing on January 5, 2001, and set forth his position that the scheduled hearing date failed to comply with the requisite ninety-day time frame. On January 3, 2001, Dixon's attorney sent MVD a third letter, representing that a person in the MVD scheduling department acknowledged that MVD had not complied with the ninety-day time frame. MVD continued the January 5, 2001, hearing to March 2, 2001.

{16} Prior to the March 2, 2001, hearing, Dixon filed a motion to dismiss on the basis that no hearing had been held within ninety days of the September NOR. On February 26, 2001, the hearing officer issued a written decision denying Dixon's motion to dismiss. Accordingly, Dixon's revocation hearing was held on March 2, 2001. At the hearing, Dixon made only one argument: that the requisite ninety-day time frame had not been met. He did not testify in support of his position but relied, instead, on documentary evidence. The hearing officer ruled in MVD's favor and issued a decision on March 2, 2001. On appeal, the district court reversed the hearing officer on the basis that Dixon had been given an initial notice of revocation on September 21, 2000, and no hearing had been held within ninety days of that date.

### 2. Arguments

{17} MVD's arguments are consistent with its hearing officer's decision. MVD argues that the September NOR was not a valid

notice of revocation because it was a motor vehicle division copy, not a violator's copy; the date of service was blank; the blood test results were not filled in; and it was not properly served because it was not mailed by MVD. As for the hearing that was scheduled in response to Dixon's request, MVD indicates that this was a clerical mistake, as opposed to an acknowledgment that Dixon had received a notice of revocation. MVD argues that it is bound only by a legitimate notice. Thus, MVD argues that (1) there was no September 21, 2000, notice of revocation provided to Dixon; and (2) even if a notice of revocation had been provided to Dixon, it was not effective to trigger the ninety-day time frame. MVD also argues that this case revolves around the factual issue of when Dixon received the notice of revocation and that there was substantial evidence in the record for the hearing officer to make a factual determination that no notice had been provided on September 21, 2000. Therefore, according to MVD, the trial court erred in substituting its judgment for that of the hearing officer.

{18} Dixon's arguments are consistent with the district court's reasoning—namely, that the initial September 21, 2000, notice triggered the ninety-day time frame.

### 3. Discussion

{19} MVD must prove by a preponderance of the evidence that the revocation hearing is held no later than ninety days after notice of revocation. *See* § 66–8–112; *Weber v. Dep't of Motor Vehicles,* 112 N.M. 697, 698, 818 P.2d 1221, 1222 (Ct.App.1991), *overruled on other grounds by State Taxation & Revenue Dep't v. Bargas,* 2000–NMCA–103, ¶ 15, 129 N.M. 800, 14 P.3d 538. Thus, it was MVD's burden to prove that Dixon was not served with notice of revocation on September 21, 2000, but rather on December 8, 2000.

{20} There was no witness testimony at the MVD hearing. The hearing officer reviewed the documentary evidence. The record includes Dixon's request for a hearing with a copy of the September NOR, signed by the arresting officer. This supports the determination that the arresting officer gave Dixon the notice at the time of arrest, and

there is no evidence to the contrary. Although the notice was premature because the blood test had not been processed, it nonetheless was a notice. To the extent MVD argues that Dixon and his attorney somehow produced the notice by bad faith means, there is simply no evidence to support this conclusion. Viewing the record in its entirety, *see Rio Grande Chapter of the Sierra Club,* 2003–NMSC–005, ¶ 17, 133 N.M. 97, 61 P.3d 806, there is but one conclusion: The officer gave Dixon a premature notice of revocation on September 21, 2000. Consequently, this case revolves around a legal issue—namely, whether the September 21, 2000, premature notice of revocation triggered the ninety-day time frame. This is a question of law, which we consider de novo. *Bargas,* 2000–NMCA–103, ¶ 8, 129 N.M. 800, 14 P.3d 538.

{21} According to Section 66–8–112, a notice of revocation informs a driver that unless a hearing is properly requested, a license will be revoked twenty days after service of written notice by a law enforcement officer or after service by mail, depending on whether the driver submits to a chemical test and whether that test is a breath or a blood test. Immediate notices of revocation are served by a law enforcement officer at the arrest scene when a driver refuses to submit to a chemical test or when a driver fails a breath test. Sections 66–8–111(B) and –112(A)(1). When a blood test is administered, MVD—not the officer—gives notice by mail after the blood test results are available and indicate that the driver's blood alcohol concentration exceeds permissible limits. Section 66–8–112(A)(2); *see also* § 66–8–111(c) (stating the threshold BAC for license revocation).

{22} In this case, Dixon took a blood test. Therefore, according to Section 66–8–112(A), Dixon should not have been given a notice of revocation until after his blood test results were received. This explains why the September NOR had some problems—chiefly, it did not indicate test results or date of service. *But see Sitzer v. State Taxation & Revenue Dep't,* 2000–NMCA–056, ¶ 10, 129 N.M. 274, 5 P.3d 1078 (holding that without a showing of prejudice, failure of the arresting officer to fill in the date of service on the

notice of revocation is not a fatal mistake). Nevertheless, the September NOR clearly sets forth Dixon's option of requesting a hearing; otherwise, his license would be revoked within twenty days of such notice. Our law is clear: Failure to properly request a hearing within ten days from "receipt of notice of revocation" shall result "in forfeiture of the person's right to a hearing." Section 66–8–112(B). It would be unreasonable to conclude that Dixon should have known that the September NOR was defective. We observe that Dixon pointed out to MVD possible procedural problems with the revocation; he also attached a copy of the notice, thus alerting MVD to any defects in the notice. In spite of the apparent defects in the notice, MVD set a hearing based on Dixon's request. We also observe that the blood test results were sent to MVD on October 19, 2000, well within the ninety-day period. Based on the above, we agree with the district court that there was no substantial evidence to support the hearing officer's determination that the September NOR was invalid. We therefore affirm the district court's judgment.

## C. Strickland's Case

{23} This case involves the interpretation of NMSA 1978, § 66–5–35 (2001), relating to the issuance of limited licenses upon suspension or revocation. Section 66–5–35(A) allows a person to "apply to the department" for a limited license, except in four enumerated instances where the person "shall not be eligible to apply." Section 66–5–35(E) directs MVD to issue a limited license to an applicant "[u]pon receipt of a fully completed application that complies with statutes and rules for a limited license and payment of the fee specified." Section 66–5–35(F) directs MVD to afford the applicant a hearing "within twenty days of denial of an application." Following the hearing, the hearing officer is directed to enter an order either approving or denying the request for a limited license. Section 66–5–35(F). From such order, a person adversely affected may appeal to district court. Sections 66–5–35(G) and 66–5–36.

## 1. Facts

{24} On April 19, 2001, Strickland sent MVD a letter requesting a hearing so that he might be issued a limited driver's license. Strickland did not request a limited license per an *application,* as required by Section 66–5–35(E). In this case, Strickland's letter effectively combines both an application request for a limited license and a hearing.

{25} On May 4, 2001, MVD sent Strickland a form letter entitled "Re: Limited License Hearing Application." The form states that "[y]our application for Limited License Hearing has been received." The middle of the form letter contains six options for MVD to check. MVD checked the last "Request is denied" box and wrote "No NM license on file" in the accompanying space. At the bottom of the form, Strickland is informed that he may seek review of MVD's decision within thirty days in district court.

{26} On June 4, 2001, Strickland appealed to district court pursuant to Rule 1–074. On July 3, 2001, before MVD received a copy of the appeal, an MVD clerk completed another form document entitled "Notice of Limited License Hearing" (Hearing Notice Form), wherein MVD scheduled a hearing to be held July 26, 2001, on Strickland's request for a limited license. The record does not reflect whether Strickland received notice of the hearing. At the bottom of the Hearing Notice Form, there is space for the hearing officer to indicate if the limited license was approved or disapproved, as well as other blocks to be filled in, depending on the evidence presented at the hearing. In this case, the box is checked, indicating that Strickland did not attend the hearing. The date "7–26–01" is written on the line above "Issue or Disapproval Date." The hearing officer signed the bottom of the form on the line above "Hearing Officer Signature," but the boxes where approval or disapproval can be marked are blank; there is no indication whether the license was approved or not. There is nothing else in the record regarding this hearing.

{27} As to Strickland's Rule 1–074 appeal, the district court originally scheduled a hearing for November 6, 2001, but then set a briefing schedule requiring petitioner's brief

to be filed by December 6, 2001, respondent's answer brief by January 4, 2002, and petitioner's reply brief by February 4, 2002. On November 27, 2001, Strickland filed a motion for summary judgment and order for hearing, arguing that his application for a limited license was denied on May 4, 2001, that he had requested a hearing within thirty days of such denial, and that MVD refused to hold a hearing. As relief, Strickland requested that the district court order MVD to hold a hearing. On November 29, 2001, before receiving any response from MVD, the district court entered its order for summary judgment in favor of Strickland and ordered MVD to hold a hearing. On December 3, 2001, MVD filed a motion to reconsider the order for summary judgment and for hearing. No action was taken on the motion; MVD appealed.

### 2. Arguments

{28} MVD presents three arguments in favor of reversal. First, it argues that there exists a genuine question of material fact regarding whether MVD provided Strickland with a hearing. MVD also contends that the district court entered the summary judgment order before expiration of the time allowed for MVD to file a response to Strickland's motion for summary judgment. Last, MVD contends that Strickland was not entitled to a hearing because according to Section 66-5-35(A), he was ineligible even to apply for a limited license. Strickland did not file an answer brief.

### 3. Discussion

{29} The circumstances raise a jurisdictional issue, which we discuss first. We acknowledge that this issue was not raised by the parties; however, jurisdiction is basic to any appeal, and "an appellate court may raise a jurisdictional issue sua sponte." *Masterman v. State Taxation & Revenue Dep't*, 1998–NMCA–126, ¶ 9, 125 N.M. 705, 964 P.2d 869. In this case, the district court entered summary judgment in favor of Strickland, but this did not end the case. The district court also ordered MVD to hold a hearing on the issue of whether the application should have been denied. We addressed a similar issue in *Martinez v. State Taxation & Revenue Department*, 117 N.M.

588, 589, 874 P.2d 796, 797 (Ct.App.1994), wherein we held that an order of the district court remanding a cause to an administrative agency for a new hearing and preparation of a proper administrative record is not a final, appealable order subject to review by this Court. The hearing ordered by the district court has not yet been held, and further proceedings are contemplated. *See, e.g., Clancy v. Gooding,* 98 N.M. 252, 254, 647 P.2d 885, 886 (Ct.App.1982) (indicating that an order is not final if the case is not completely disposed of to the extent of the district court's power). The right to appeal is restricted to final judgments and decisions of the district courts; the decision, in this case, is essentially a remand for further proceedings. *High Ridge Hinkle Joint Venture v. City of Albuquerque,* 119 N.M. 29, 33, 888 P.2d 475, 479 (holding that the order remanding one count of the complaint to the city council for decision was not a final, appealable order and that this Court therefore had no jurisdiction to review neighborhood association's appeal).

{30} Based on the foregoing discussion, we conclude we have no jurisdiction and therefore dismiss MVD's appeal in the Strickland case for lack of a final order.

### III. CONCLUSION

{31} We hold that Rule 12–505(A)(1) governs the procedure by which an aggrieved party may seek review in this Court of a district court's determination based on a Rule 1–074 appeal authorized by Section 39–3–1.1. Consequently, MVD should have filed petitions for writs of certiorari in both cases. Because of the unusual circumstances in these cases, the notices of appeal will be treated as petitions for writs of certiorari, which we grant. We affirm the district court in Dixon's case. We dismiss Strickland's case because there is no final, appealable order.

{32} **IT IS SO ORDERED.**

WE CONCUR: CYNTHIA A. FRY and IRA ROBINSON, Judges.