2007-NMCA-163

172 P.3d 1287

STATE of New Mexico, ex rel. CHIL-
DREN, YOUTH & FAMILIES DE-
PARTMENT, Petitioner–Appellee,

v.

MICHAEL T. a/k/a Mark W.E. and Other
Names, Respondent–Appellant.

In the Matter of Shiswashka Wakanda
Aurora B.F. II, a/k/a Shishy T., Wausho-
shie T., a/k/a Shockie T., and Comet T.,
a/k/a Carmen T., Children,

and

Terry Thoreson, Interested Party.

No. 27,366.

Court of Appeals of New Mexico.

Nov. 8, 2007.

Gary K. King, Attorney General, Children,
Youth and Families Department, Simon
Romo, Chief Children's Court Attorney, Dan-
iel J. Pearlman, Children's Court Attorney,
Santa Fe, NM, for Appellee.

Klipstine, Bowlin & Honigmann, LLC,
Melissa A. Honigmann, Hobbs, NM, for Ap-
pellant.

Judy Pittman, Roswell, NM, Guardian ad
Litem for Children.

Linda Foster, Roswell, NM, for Interested
Party.

## OPINION

FRY, Judge.

{1} In this abuse and neglect proceeding,
Michael T. (Father) appeals the district
court's order denying his motion to suppress

evidence resulting from an alleged illegal search of his home. We consider whether the exclusionary rule is applicable in civil abuse and neglect proceedings. Because we hold that the exclusionary rule does not extend to such cases, we affirm the district court.

## BACKGROUND

{2} On June 19, 2006, a woman in Kansas (the reporting party) called the Chaves County Sheriff's Department to report that she was concerned about the safety of her mother. The reporting party stated that her mother, Carolyn Jewell, had traveled to New Mexico to see a "medicine doctor" and that the reporting party had not heard from her mother in two weeks. Furthermore, when the reporting party called in an attempt to locate her mother, a man answered the phone and told her that her mother was unavailable.

{3} Deputy Ralph Moore was dispatched to Father's residence, which was Jewell's reported location, to do a "welfare check" on Jewell. Deputy Moore testified that he observed a young child outside the residence who noticed the deputy, went into the residence, closed the door, and turned off the porch light. Initially, no one answered Deputy Moore's knocks on the door, although he could hear voices inside. The child eventually opened the door only a crack, answered some questions posed by Deputy Moore, and closed the door again. At that point, Deputy Moore saw a man leave the residence from a side entrance. The man ignored the officer's request to stop, got into a vehicle, and drove off. Deputy Moore got into his patrol car, followed the man who had left the residence, and stopped him. The man told Deputy Moore that he was not the owner of the house but that he had been treated for his diabetes by the medicine man who lived there, and that the medicine man was in the house with his wife and three girls.

{4} Deputy Moore returned to the residence, where he was joined by Sergeant Daniel Ornelas. The officers knocked on the windows and doors, all the while identifying themselves as the "sheriff's department." While the officers were knocking on the doors and windows of the residence, a woman identifying herself as Carol Jewell called 911 to report that someone was attempting to break into the residence. The 911 operator advised the caller that it was the sheriff's department and that she should open the door. Jewell opened the door and spoke to Deputy Moore. When asked whether she was safe and okay, she shrugged her shoulders and, according to Deputy Moore, she "didn't seem quite with it." At that point, with Jewell behaving so oddly, the officers asked her to further open the door, which she did, whereupon they proceeded to enter the residence and search the entire house. Inside the residence, the officers found Father and his three children. They also found the windows covered up with foil, pill bottles throughout the house, a bottle labeled "arsenic," and capsules containing an unknown substance. In addition, there appeared to be inadequate food, clothing, and bedding for the children.

{5} As a result of the officers' observations inside the house, the Children, Youth, and Families Department (CYFD) took the children into custody and filed a petition alleging that Father had abused and/or neglected the children. In anticipation of the adjudicatory hearing, Father filed a motion to suppress all evidence "obtained and derived" from the June 19, 2006, search of his residence. Father argued that the search of his residence was illegal under the Fourth Amendment of the United States Constitution and Article II, Section 10 of the New Mexico Constitution, and that the proper remedy for the violation of his rights was suppression of the evidence. In response, CYFD argued that the search was reasonable and not illegal because it was conducted pursuant to a welfare check, not in connection with a typical criminal investigation. Alternatively, CYFD argued that even if the search was illegal, the remedy of suppression does not apply in cases of abuse and neglect.

{6} At the hearing on the motion to suppress, the district court ruled that the warrantless search of the residence did not violate Father's constitutional rights because the police were justified under the "emergency doctrine" in conducting a welfare check on Jewell. The district court also concluded

that even if the search was illegal, the exclusionary rule was not an appropriate remedy in an abuse and neglect proceeding. Based in part on the evidence from the June 19, 2006, search of Father's residence, the district court concluded that Father's children were abused and neglected and that, in the best interests of the children, they should remain in CYFD custody.

## DISCUSSION

{7} On appeal, the parties make the same arguments they made below. Father argues that the search of his residence violated his federal and state constitutional rights against unreasonable searches and seizures. Father contends that the district court should have suppressed all the evidence obtained by the allegedly unreasonable search under the exclusionary rule.

{8} If we determine that the exclusionary rule does not apply in abuse and neglect proceedings, it is not necessary for us to determine whether the search violated Father's constitutional rights. The question of whether the exclusionary rule should apply to child abuse and neglect proceedings is a question of constitutional law that we review de novo. *State v. Marquart*, 1997–NMCA–090, ¶ 7, 123 N.M. 809, 945 P.2d 1027. It is also a question of first impression in New Mexico.

{9} Both Article II, Section 10 of the New Mexico Constitution and the Fourth Amendment to the Federal Constitution protect the rights of citizens to be free from unreasonable searches and seizures. The exclusionary rule prohibits the government's use of evidence obtained through unreasonable search or seizure. However, there are some contexts in which the exclusionary rule does not apply. For example, we recently held that the exclusionary rule does not apply "in school disciplinary proceedings because the purpose of the exclusionary rule is not advanced in such proceedings." *Scanlon v. Las Cruces Pub. Schs.*, 2007–NMCA–150, ¶ 10, 143 N.M. 48, 172 P.3d 185.

{10} In reaching this conclusion in *Scanlon*, we compared the purpose of the exclusionary rule under the United States Constitution with the purpose of the rule under the New Mexico Constitution. *See id.* ¶¶ 11–13. The federal constitutional guarantee does not categorically require exclusion. Instead, it represents a policy to deter future unreasonable investigations. *Id.* ¶ 11. Thus, the federal exclusionary rule does not apply in civil proceedings. *Id.* On the other hand, New Mexico courts have interpreted the New Mexico constitutional guarantee against unreasonable searches and seizures as implying a constitutional right to the exclusion of illegally obtained evidence. *Id.* ¶ 12. As noted in *Scanlon*, this Court has determined that the exclusionary rule applies in probation revocation hearings, even though such proceedings are not criminal prosecutions. *Id.* ¶ 13 (*citing Marquart*, 1997–NMCA–090, ¶ 17). This is because the liberty interest at stake in a probation revocation hearing is "the same as the liberty interest at stake in a criminal proceeding." *Scanlon*, 2007–NMCA–150, ¶ 13. The exclusionary rule safeguards this liberty interest "by putting the parties in the same position they would have been in had the constitutional violation not occurred." *Id.* ¶ 12. Thus, in deciding whether the exclusionary rule should apply in abuse and neglect proceedings, we consider the purpose of the rule and the nature of the proceeding.

{11} An abuse and neglect proceeding is not a criminal prosecution. *See In re Pamela A.G.*, 2006–NMSC–019, ¶ 12, 139 N.M. 459, 134 P.3d 746 (holding that the confrontation clause of the Sixth Amendment to the federal constitution does not apply because "neglect and abuse proceedings are civil proceedings"). Instead, abuse and neglect proceedings are brought on behalf of children by the state. NMSA 1978, § 32A–4–10 (2005). A stated purpose of the Children's Code is "to provide for the care, protection and wholesome mental and physical development of children ... and then to preserve the unity of the family whenever possible. *The child's health and safety shall be the paramount concern.*" NMSA 1978, § 32A–1–3(A) (1999) (emphasis added). Under the Abuse and Neglect Act, "the paramount concern [in determining custody is] the child's health and safety." NMSA 1978, § 32A–4–7(D) (2005).

{12} Father argues that abuse and neglect proceedings are quasi-criminal in na-

ture and that extending the exclusionary rule is consistent with New Mexico's policy protecting Father's liberty interest in raising his children. Father's argument based on his rights as a parent ignores the underlying purpose of abuse and neglect proceedings and the Children's Code, which is to protect the rights of children. While this abuse and neglect proceeding may ultimately result in termination of Father's rights to parent his children, the purpose of the proceeding is to protect the children, not to punish Father. Because the nature of the proceeding is to protect the interests and well-being of the children, the purposes of the exclusionary rule—deterring unreasonable searches and seizures (under the United States Constitution) and preserving the status quo in order to protect a person's liberty interest (under the New Mexico Constitution)—would not be advanced if the evidence is suppressed.

{13} We have found no cases, and the parties do not cite to any, in which any other jurisdiction has applied the exclusionary rule in the context of abuse and neglect proceedings. Other jurisdictions that have addressed the issue have held that the exclusionary rule should not apply in civil abuse and neglect proceedings because it may thwart the State's interest in the protection of children. *See, e.g., In re Corey P.,* 269 Neb. 925, 697 N.W.2d 647, 655 (2005) (holding the exclusionary rule to be inapplicable in juvenile protection proceedings because such application "may lead to an erroneous conclusion that there has been no abuse or neglect, leaving innocent children to remain in unhealthy or compromising circumstances"); *State ex rel. A.R. v. C.R.,* 1999 UT 43, ¶¶ 18–20, 982 P.2d 73 (concluding that the state's interest in protecting children militated against application of the exclusionary rule in abuse and neglect proceedings). In *State ex rel. A.R.,* the Utah Supreme Court addressed arguments nearly identical to those advanced by Father. In that case, the parent who faced the loss of custody argued that the case was quasi-criminal in nature, and thus, that the exclusionary rule should apply. *Id.* ¶ 18. The Utah Supreme Court reasoned that the exclusionary rule was inapplicable in such a case because its purposes were not served.

The primary focus of and sole statutory justification for child protection proceedings is to protect the interests of children who are neglected or abused.... Although parents may suffer a severe detriment in losing temporary or permanent custody of their children, punishment of the parents is not the purpose of the proceeding.

*Id.*

{14} We agree with this reasoning. The interests at stake here are not the same as the liberty interest at stake in criminal prosecutions and probation revocation proceedings. The purpose of the exclusionary rule is not served in an abuse and neglect proceeding whose focus is the health and safety of innocent children.

█ {15} Father also argues that his due process rights under the Fourteenth Amendment require application of the exclusionary rule. Father did not preserve this argument for appeal. To preserve an argument for appeal "it must appear that a ruling or decision by the district court was fairly invoked." *State ex. rel. CYFD v. Kathleen D.C.,* 2007–NMSC–018, 9, 141 N.M. 535, 157 P.3d 714 (internal quotation marks and citation omitted). Father did not argue due process under the Fourteenth Amendment in his written motion to the district court or during the hearing on the motion. Because Father did not preserve this issue for appeal and because he does not argue that denial of his motion to suppress was fundamental error, we do not address it now. *See In re Aaron L.,* 2000–NMCA–024, ¶ 10, 128 N.M. 641, 996 P.2d 431 (explaining that reviewing court will not consider issues not raised in the trial court unless the issues involve matters of jurisdictional or fundamental error).

## CONCLUSION

{16} For the foregoing reasons, we affirm the district court's denial of Father's motion to suppress evidence and remand for further proceedings.

{17} **IT IS SO ORDERED.**

WE CONCUR: A. JOSEPH ALARID and IRA ROBINSON, Judges.