**Certiorari Denied, March 8, 2011, No. 32,862**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2011-NMCA-031**

**Filing Date: January 20, 2011**

**Docket No.  29,453**

**TYLER GLYNN,**

    **Petitioner-Appellant,**

**v.**

**STATE OF NEW MEXICO TAXATION
AND REVENUE DEPARTMENT, MOTOR
VEHICLE DIVISION,**

    **Respondent-Appellee.**

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY
Williams C. Birdsall, District Judge**

Titus & Murphy, P.C.
Victor A. Titus
Farmington, NM

for Appellant

Gary K. King, Attorney General
Julia Belles, Special Assistant Attorney General
Santa Fe, NM

for Appellee

**OPINION**

**FRY, Judge.**

**{1}**    Petitioner Tyler Glynn (Driver) appeals the district court's ruling affirming the Motor Vehicle Division's (MVD) revocation of his driver's license.  Driver contends that the district court and the MVD erred in concluding that at the license revocation hearing the MVD could consider the constitutionality of the traffic stop that resulted in his arrest for driving while intoxicated (DWI).

Driver also contends that the MVD and the district court were collaterally estopped from considering the constitutionality of the stop by a prior municipal court ruling that there was no probable cause to stop Driver. For the following reasons, we affirm and conclude that the validity of the traffic stop is irrelevant to the issues to be decided by the MVD in a license revocation proceeding and, further, that the exclusionary rule does not apply in such a proceeding. Because of our disposition, we need not consider Driver's collateral estoppel argument.

**BACKGROUND**

{2}     Driver was arrested in March 2008 for DWI. A Farmington police officer observed Driver's vehicle strike a curb and fail to maintain its lane. After making contact with Driver, the officer observed that Driver had an odor of alcohol, and Driver admitted to drinking alcohol. Driver failed field sobriety tests, and his breath alcohol test resulted in readings of .09 and .08. Driver was then served with a notice of license revocation pursuant to the Implied Consent Act (the Act), NMSA 1978, Sections 66-8-105 to -112 (1978, as amended through 2010). Following his arrest, a criminal charge of DWI was filed in the Farmington, New Mexico, municipal court. Driver filed a motion to suppress evidence obtained as a result of the traffic stop, which the municipal court granted, finding that there was "insufficient probable cause for [the] stop." As a result of the suppression, the charge against Driver in municipal court was dismissed with prejudice.

{3}     Meanwhile, Driver had requested a license revocation hearing before the MVD pursuant to Section 66-8-112. After the municipal court dismissed the DWI charge against him, Driver filed a motion with the MVD to dismiss the revocation proceedings, arguing that the MVD was now collaterally estopped from reconsidering whether there was reasonable suspicion to justify his stop because the issue had already been decided by the municipal court. Driver also filed a motion to suppress the evidence obtained after his stop, arguing that the officer lacked reasonable suspicion to stop Driver's vehicle.

{4}     At the revocation hearing, the MVD hearing officer concluded that collateral estoppel was inapplicable because the municipal court had employed the wrong standard in analyzing the legality of the traffic stop; the municipal court had decided that there was no probable cause to stop Driver and not that there was no reasonable suspicion. In addition, the hearing officer concluded that even if the elements of collateral estoppel had been met, it was inapplicable because MVD, as an administrative agency, was unable to grant equitable remedies such as collateral estoppel. The hearing officer then determined that the police officer had reasonable suspicion to stop Driver and that all of the evidence obtained after the stop was admissible. After finding that all elements necessary for revocation had been established, the hearing officer revoked Driver's license for six months.

{5}     Following the hearing, Driver appealed the MVD's revocation of his license to the district court. On appeal, Driver argued that the officer lacked reasonable suspicion to stop him, that collateral estoppel applied, and that the breath alcohol tests were invalid. In addition to requesting that the district court exercise its appellate jurisdiction to review the MVD's decision, Driver asked the district court to invoke its original jurisdiction to decide the constitutional question of whether there was reasonable suspicion for the stop. Driver contended that the MVD was not permitted to decide constitutional questions and that the issue of reasonable suspicion could only be considered in the district court. The district court affirmed the revocation of Driver's license, concluding that

2

the MVD's decision was supported by substantial evidence, that there was sufficient evidence of reasonable suspicion, that collateral estoppel did not apply, and that the results of the breath alcohol tests were admissible. However, the district court did not make any ruling on whether the MVD had the authority to decide the constitutional question raised by Driver.

**{6}** Driver appeals the judgment of the district court, arguing that the MVD does not have the statutory authority to consider whether a stop is supported by reasonable suspicion and that only the district court has jurisdiction to consider the issue. In addition, Driver maintains that collateral estoppel barred the district court from reconsidering whether the stop was lawful. For the following reasons, we affirm the revocation of Driver's license.

## DISCUSSION

### Driver's Appeal Was Timely Filed

**{7}** As an initial matter, the MVD argues that Driver's appeal was untimely because he filed a notice of appeal pursuant to Rule 12-201 NMRA, not a petition for certiorari in accordance with Rule 12-505 NMRA (2006). The district court entered an order affirming the judgment of the MVD on March 18, 2009. Driver filed a notice of appeal on March 30, 2009, twelve days after the entry of the district court's order. On April 21, 2009, thirty-four days after the entry of the district court's order, Driver filed a docketing statement. Driver's docketing statement requested, for the first time, a writ of certiorari to review the district court's decision. The MVD contends that because the district court exercised only its appellate jurisdiction, Driver was required to file a petition for a writ of certiorari within twenty days of the district court's decision and that Driver's notice of appeal was insufficient to meet this requirement.

**{8}** When a party appeals from a judgment reflecting the district court's exercise of its appellate jurisdiction, Rule 12-505 requires the party to file a petition for a writ of certiorari in the Court of Appeals. At the time Driver filed his notice of appeal, Rule 12-505(C) provided that a "petition for writ of certiorari shall be filed with the clerk of the Court of Appeals within twenty (20) days after entry of the final action by the district court." However, when a party appeals the district court's exercise of its original jurisdiction, the party must file a notice of appeal within thirty days of the district court's final order. Rule 12-201(A)(2).

**{9}** The MVD argues that because the district court exercised only its appellate jurisdiction, Driver was required to file a petition for certiorari within twenty days of the district court's final order. Because Driver filed a notice of appeal within twenty days, but not a petition for a writ of certiorari, the MVD contends that Driver's appeal was untimely. In response, Driver argues that the district court declined to exercise its original jurisdiction, despite Driver's request that it do so in order to determine whether the traffic stop was constitutionally sound. Consequently, Driver maintains the proper procedure for appealing from the district court's refusal to exercise its original jurisdiction is a direct appeal, not a petition for writ of certiorari. Driver further contends that it is unclear what mechanism should be used by a party seeking review if the district court concurrently exercises both its appellate and original jurisdiction.

{10}    We first observe that the district court's order does not unambiguously state that the court declined to exercise its original jurisdiction.  Rather, the order is conflicting regarding what type of jurisdiction the court exercised.  On the one hand, the order states the findings necessary to uphold the MVD's statutory determinations "[i]n accordance with [Section] 66-8-12, and Rule 1-074 NMRA," which suggests that the district court was acting in its appellate capacity.  However, the order also goes on to state that "there was sufficient evidence of reasonable suspicion to stop [Driver's] vehicle."  This conclusion suggests that the district court was acting in accordance with its original jurisdiction.

{11}    We have previously noted that "this Court may, at its discretion, elect to treat a notice of appeal as a petition for writ of certiorari if the notice of appeal was filed within twenty days after the district court's final action." *Dixon v. State Taxation & Revenue Dep't*, 2004-NMCA-044, ¶ 10, 135 N.M. 431, 89 P.3d 680.  Because of the uncertainty regarding the district court's order and the uncertainty regarding the correct procedure for appealing a district court's decision involving both its appellate and original jurisdiction, we elect to treat Driver's notice of appeal as a timely petition for writ of certiorari since it was filed within twenty days of the district court's order. *See Maso v. State Taxation & Revenue Dep't*, 2004-NMCA-025, ¶ 17 n.1, 135 N.M. 152, 85 P.3d 276 (declining to decide whether an appeal from a decision in which the district court exercises both appellate and original jurisdiction would be made by filing a notice of appeal, a petition for certiorari, or both). We therefore address the merits of Driver's appeal.

**The Legality of the Traffic Stop Is Not an Issue to Be Decided by the MVD**

{12}    Driver argues that the MVD lacks subject matter jurisdiction in revocation proceedings to decide whether a stop is justified by reasonable suspicion.  Driver relies on *Maso*, in which the driver untimely requested an MVD hearing on the revocation of his driver's license and argued that his request was late because he did not understand the English-language notice of revocation served on him. *Id.* ¶¶ 4-5.  The driver argued that the MVD's denial of a hearing due to the late request constituted a denial of due process of law. *Id.* ¶ 6.  This Court held that "[b]ecause Section 66-8-112(E) specifies the issues that MVD can consider in a revocation proceeding, MVD cannot adjudicate constitutional questions," such as the due process question asserted by the driver. *Id.* ¶ 12.

{13}    Driver contends that because the determination of whether the stopping officer had reasonable suspicion is a constitutional question, *Maso* prohibits the MVD from considering the question.  Driver argues that while the MVD is not permitted to consider whether a stop is justified by reasonable suspicion, the district court, exercising its original jurisdiction, can consider whether reasonable suspicion justified a stop.  In response, the MVD argues that consideration of whether a stop is justified by reasonable suspicion is implicitly within the scope of MVD's statutory authority.  The MVD maintains that the district court can only consider whether reasonable suspicion justified a stop when reviewing the MVD's decision while exercising its appellate jurisdiction.

{14}    Determining the MVD's authority in revocation hearings under the Act is a question of law that we review de novo. *Cf. Martinez v. N.M. State Eng'r Office*, 2000-NMCA-074, ¶ 20, 129 N.M. 413, 9 P.3d 657 (stating that determining what issues may be decided by the state personnel board

4

under the applicable statutory scheme is a question of law). To the extent that Driver contends the MVD lacks the statutory authority to consider the validity of a traffic stop that results in license revocation, we agree. As we explain below, we conclude that a traffic stop that complies with Fourth Amendment requirements is not a necessary element of a license revocation under the Act.

{15} The Act provides that "[a]ny person who operates a motor vehicle within this state shall be deemed to have given consent . . . to chemical tests of his breath or blood or both . . . for the purpose of determining the drug or alcohol content of his blood if arrested" for any driving-related offense allegedly committed while the person was under the influence. Section 66-8-107(A). When an officer arrests a driver for DWI, if the arrested driver refuses to submit to a chemical test or if the test of the driver's blood or breath reveals an alcohol concentration above specified statutory levels, the arresting officer serves the driver with written notice of revocation and of the driver's right to a hearing, takes the driver's license, and issues a temporary license to the driver. Section 66-8-111.1. Within ten days of receiving the notice of revocation, the driver may then request a hearing before the MVD. Section 66-8-112(B).

{16} If the driver requests a hearing, the applicable statute limits the MVD hearing officer's authority as follows:

> F.     The [MVD] shall enter an order sustaining the revocation or denial of the person's license or privilege to drive if the [MVD] finds that:
>
> > (1)     the law enforcement officer had reasonable grounds to believe the driver was driving a motor vehicle while under the influence of intoxicating liquor or drugs;
> >
> > (2)     the person was arrested;
> >
> > (3)     this hearing is held no later than ninety days after notice of revocation; and
> >
> > (4)     either:
> >
> > > (a)     the person refused to submit to the test upon request of the law enforcement officer after the law enforcement officer advised him that his failure to submit to the test could result in the revocation of his privilege to drive; or
> > >
> > > (b)     that a chemical test was administered pursuant to the provisions of the Implied Consent Act and the test results indicated an alcohol concentration in the person's blood or breath of eight one hundredths or more if the person is twenty-one years of age or older, four one hundredths or more if the person is driving a commercial motor vehicle or two one hundredths or more if the person is less than twenty-one years of age.

Section 66-8-112(F).

**{17}** "In reviewing a statute, this Court's role is to effect the [L]egislature's intent as evidenced by the statute's plain terms and to avoid strained or absurd construction. The first rule of statutory construction is that the plain language of a statute is the primary indicator of legislative intent." *Dixon*, 2004-NMCA-044, ¶ 6 (internal citation omitted).

**{18}** Notably, Section 66-8-112(F) does not indicate that the validity of the traffic stop that resulted in a DWI arrest is an issue. The only issues to be decided by the hearing officer are whether (1) the officer had reasonable grounds to believe the driver was driving while under the influence, (2) the person was arrested, (3) the hearing was held within ninety days after notice of revocation, and (4) the driver either refused chemical testing or his/her test resulted in specified blood alcohol concentrations. The plain language of the statute says nothing about the preliminary traffic stop. Thus, even assuming that an officer did not have reasonable suspicion to stop the driver's vehicle, the statute states that revocation of a driver's license will be upheld as long as the officer had reasonable grounds to believe the driver was DWI and the other three elements are satisfied.

**{19}** The MVD maintains that the hearing officer's authority to determine the validity of the traffic stop is implicit. In support of its argument, the MVD relies on *State ex rel. Taxation & Revenue Dep't v. Van Ruiten*, 107 N.M. 536, 760 P.2d 1302 (Ct. App. 1988). In that case, the driver appealing the revocation of his driver's license argued that the police officer did not have reasonable suspicion to instigate the traffic stop. *Id.* at 538, 760 P.2d at 1304. This Court stated, "we assume, as do the parties, that such is implicit in the issues to be decided at the administrative hearing." *Id.* Because this statement was an assumption rather than a determination of a contested issue, it constitutes dicta. *See State v. Sims*, 2010-NMSC-027, ¶ 20, 148 N.M. 330, 236 P.3d 642 (explaining that "dicta is language unnecessary to the decision of the issues before the court and is not binding as a rule of law" (internal citation omitted)). We conclude that by its plain terms, the Act does not require the MVD hearing officer to consider the validity of the traffic stop underlying the license revocation at issue.

**{20}** Driver does not disagree with our reading of the elements to be decided by the MVD hearing officer. Instead, Driver assumes that reasonable suspicion for the underlying traffic stop is constitutionally mandated and that only the district court has the authority to decide the issue. We agree that the Fourth Amendment to the United States Constitution protects against unreasonable searches and seizures. *State v. Johnson*, 2010-NMSC-016, ¶ 13, 148 N.M. 50, 229 P.3d 523. However, the actual question we must consider is whether the exclusionary rule applies in administrative license revocation proceedings. If the exclusionary rule does not apply to the proceedings, then the authority of the MVD to consider the legality of a stop is irrelevant because the evidence would be admitted regardless of the legality of the stop. *See Scanlon v. Las Cruces Pub. Schs.*, 2007-NMCA-150, ¶ 9, 143 N.M. 48, 172 P.3d 185 (noting that a constitutional violation would only affect the outcome of an administrative proceeding "if the evidence obtained during the search could not be considered as a basis for the hearing authority's disciplinary action"). The question of whether the exclusionary rule applies to a license revocation proceeding is a constitutional question that we review de novo. *See State ex rel. Children, Youth & Families Dep't v. Michael T.*, 2007-NMCA-163, ¶ 8, 143 N.M. 75, 172 P.3d 1287.

**The Exclusionary Rule Does Not Apply in License Revocation Hearings**

6

**{21}**     Both Driver and the MVD maintain that the exclusionary rule should apply in license revocation hearings. However, we are not bound by the MVD's apparent concession on this issue, and we conduct our own analysis as to whether the rule is applicable under these circumstances. *Cf. State v. Caldwell*, 2008-NMCA-049, ¶ 8, 143 N.M. 792, 182 P.3d 775 (explaining that appellate courts are not bound by the state's concession that conduct was unitary for purposes of double jeopardy analysis and that this Court will conduct its own analysis).

**{22}**     This Court first considered whether the exclusionary rule applies in administrative proceedings in *Scanlon*, 2007-NMCA-150, ¶ 11. In that case, we noted that under federal law, the exclusionary rule is not a constitutional right but a prudential rule designed to deter future unconstitutional government conduct. Federal law does not extend application of the exclusionary rule to civil proceedings. *Id.* We further noted that our Supreme Court has interpreted the New Mexico Constitution to implicitly provide a personal right to the exclusion of illegally obtained evidence. *Id.* ¶¶ 11-12. The exclusionary rule "safeguard[s] the right to be protected from unreasonable searches and seizures by putting the parties in the same position they would have been in had the constitutional violation not occurred." *Id.* ¶ 12. However, the "core application" of the right to exclude evidence "is in the context of criminal prosecution brought to bear after violation of that right." *Id.* ¶ 13 (internal quotation marks and citation omitted).

**{23}**     Despite the fact that the right to exclude illegally obtained evidence is primarily reserved for criminal prosecutions, our Supreme Court has applied the exclusionary rule in at least one type of proceeding that is not a criminal trial—probation revocation proceedings. *Id.* We explained in *Scanlon* that the exclusionary rule applied in probation proceedings because "the liberty interest at stake in a probation revocation hearing is the same as the liberty interest at stake in a criminal proceeding." *Id.* Specifically, in both criminal trials and probation revocation proceedings, an individual's freedom can be affected by the admission or exclusion of illegally obtained evidence. *Id.* We noted that "a probation revocation proceeding is closely related to the core purpose of preventing the use of illegally obtained evidence against a person accused of a crime." *Id.*

**{24}**     We then concluded that the exclusionary rule did not apply in a school disciplinary hearing because the "child's interest in continuing his education" was "unrelated to the liberty interest at stake in a criminal trial or in a probation revocation proceeding." *Id.* ¶ 14. We explained that "[b]ecause school disciplinary proceedings are so far removed from the context of criminal prosecution brought to bear after violation of the right to be free from unwarranted governmental intrusion, . . . they are not the intended context for the protections provided by New Mexico's constitutional exclusionary rule." *Id.* We concluded that the "hearing authority properly considered the evidence" that was allegedly illegally seized from the student's car. *Id.*

**{25}**     Relying on *Scanlon*, we later concluded that the exclusionary rule also does not apply in abuse and neglect proceedings. *Michael T.*, 2007-NMCA-163, ¶ 14. We rejected the father's argument that the exclusionary rule should apply because the proceedings are quasi-criminal in nature. *Id.* ¶ 12. We explained that while the proceedings might ultimately result in the termination of a parent's right to his or her children, the nature of the proceeding is to protect the children, not to punish the parents. *Id.* ¶¶ 11-12. We noted that the "purposes of the exclusionary rule—deterring unreasonable searches and seizures (under the United States Constitution) and preserving the status quo in order to protect a person's liberty interest (under the New Mexico Constitution)—would not be advanced if the evidence [was] suppressed." *Id.* ¶ 12.

7

**{26}** Thus, whether the exclusionary rule applies to MVD driver's license revocation proceedings depends on whether the purposes of the rule would be furthered by its application to these proceedings. A license revocation proceeding, like a proceeding for termination of parental rights, is quasi-criminal in nature. *See Dente v. State Taxation & Revenue Dep't*, 1997-NMCA-099, ¶ 7, 124 N.M. 93, 946 P.2d 1104 (noting that "[l]icense revocation proceedings are much in the nature of criminal or quasi-criminal proceedings"), *overruled on other grounds by State Taxation & Revenue Dep't v. Bargas*, 2000-NMCA-103, ¶ 15, 129 N.M. 800, 14 P.3d 538. While the proceedings are quasi-criminal, our Supreme Court has held that a driver's license revocation is remedial, not punitive, and that it "serves the legitimate nonpunitive purpose of protecting the public from the dangers presented by drunk drivers and helps enforce regulatory compliance with the laws governing the licensed activity of driving." *State ex rel. Schwartz v. Kennedy*, 120 N.M. 619, 632, 904 P.2d 1044, 1057 (1995). Unlike a criminal trial or a probation revocation proceeding, a person's liberty interests are not at stake in an MVD license revocation proceeding. Rather, the only interest at stake for a driver in a revocation proceeding is his or her ability to drive a vehicle. But the loss of this ability constitutes the loss of a privilege, not the loss of a right. *See generally* NMSA 1978, § 66-5-30 (2003) (authorizing the MVD to suspend or revoke licenses); *see also Schwartz*, 120 N.M. at 631, 904 P.2d at 1056 (explaining that driving is an activity regulated by the government and that "administrative revocation of the person's license is not considered punishment for a crime"); *Johnson v. Sanchez*, 67 N.M. 41, 46, 351 P.2d 449, 452 (1960) (holding that a driver's license is a privilege). Consequently, a driver who loses his or her license has even less at stake than does a parent in a proceeding for termination of parental rights. *See State ex rel. Children, Youth & Families Dep't v. John R.*, 2009-NMCA-025, ¶ 27, 145 N.M. 636, 203 P.3d 167 (explaining that "a parent has a fundamental interest in the care, custody, and control of his or her children"). Just as we concluded that the exclusionary rule does not apply in proceedings for the termination of parental rights, we now conclude that the rule has no applicability in license revocation proceedings. The primary purpose of both types of proceedings is the protection of someone other than the person whose Fourth Amendment rights were allegedly violated—the children in a termination proceeding and the driving public in a license revocation proceeding.

**{27}** The majority of courts in other jurisdictions that have addressed this issue have concluded that the exclusionary rule does not apply in proceedings for the revocation of a driver's license. *See, e.g.*, *Martin v. Kan. Dep't of Revenue*, 176 P.3d 938, 953 (Kan. 2008) (holding that the exclusionary rule does not apply in administrative proceeding to revoke a driver's license under a statutory scheme substantially similar to New Mexico's Implied Consent Act); *Lopez v. Dir., N.H. Div. of Motor Vehicles*, 761 A.2d 448, 451 (N.H. 2000) (same); *Fishbein v. Kozlowski*, 743 A.2d 1110, 1119 (Conn. 1999) (same); *Powell v. Sec'y of State*, 614 A.2d 1303, 1306-07 (Me. 1992) (same ); *see also Tornabene v. Bonine ex rel. Ariz. Highway Dep't*, 54 P.3d 355, ¶¶ 25-26 (Ariz. Ct. App. 2002) (same). The Maine Supreme Judicial Court aptly observed that "[r]equiring hearing examiners to apply the exclusionary rule would unnecessarily complicate and burden an administrative proceeding designed to focus on the single issue of whether a person was operating a vehicle with excessive alcohol in his blood." *Powell*, 614 A.2d at 1307; *see Dente*, 1997-NMCA-099, ¶ 7 (explaining that a license revocation hearing is "designed to be a summary administrative proceeding that handles revocation matters quickly").

**{28}** Driver analogizes license revocation to civil forfeiture of property under the Controlled Substances Act and argues that because the exclusionary rule applies in forfeiture proceedings, it should also apply in license revocation proceedings. *See In re Forfeiture of Fourteen Thousand Six*

8

*Hundred Thirty Nine Dollars ($14,639)*, 120 N.M. 408, 413, 902 P.2d 563, 568 (Ct. App. 1995) (holding that exclusionary rule applies in forfeiture proceedings). He maintains that forfeiture of property is tied to the commission of drug offenses just as license revocation is tied to the commission of DWI.

**{29}**    We are not persuaded. Forfeiture proceedings have no purpose other than punishment of the person who has violated the Controlled Substances Act. *See id.* at 412-13, 902 P.2d at 567-68 (noting that the purpose of forfeiture "is to penalize for the commission of an offense against law" and that "the [L]egislature's choice to tie forfeiture directly to the commission of drug offenses . . . confirms the punitive nature of these provisions" (internal quotation marks and citation omitted)). In contrast, a license revocation may penalize a driver, but its primary goal "is to provide the public with safe roadways." *Schwartz*, 120 N.M. at 635, 904 P.2d at 1060.

**{30}**    The MVD's primary argument in support of the exclusionary rule's applicability appears to be that the MVD has always interpreted the Act to require hearing officers to determine whether an arrest of a driver was lawful and that if the exclusionary rule does not apply, a person who was improperly arrested but not charged could still face license revocation. We agree with the MVD that the Act requires a hearing officer to determine whether a law enforcement officer "had reasonable grounds to believe" that a driver was DWI, Section 66-8-112(F)(1), and that this determination is similar to a determination of whether probable cause supports an arrest. *See State v. Richerson*, 87 N.M. 437, 440, 535 P.2d 644, 647 (Ct. App. 1975) (stating that "a lawful arrest [is] the essential introductory step to implied consent provisions"). However, by the Act's express terms, this determination does not include a determination regarding the reasonableness of the stop preceding the arrest.

**{31}**    Furthermore, we see no inherent inconsistency in a scenario in which a driver's license is revoked even if the same driver is not charged with or convicted of DWI due to, for example, an illegal stop. A license revocation hearing "is entirely separate and distinct from the proceeding to determine the guilt or innocence of the person as to the crime of DWI." *See Schwartz*, 120 N.M. at 626, 904 P.2d at 1051 (internal quotation marks and citation omitted). The exclusionary rule excludes evidence of the illegal stop from the criminal DWI proceeding, thereby preventing the loss of the driver's liberty interest and deterring future police misconduct. The driver nonetheless loses his or her driver's license in order to temporarily remove the driver from the roads of the state if the police officer had reasonable grounds to believe the driver was DWI and if the other elements necessary for revocation are met. The revocation serves to protect the public from a driver who has chosen either to refuse chemical testing or to ingest intoxicating alcohol or drugs before driving, regardless of whether the initial traffic stop was valid or not.

**{32}**    In response to the concern that police will be encouraged to heedlessly stop drivers without reasonable suspicion in order to secure license revocations, we quote the apt observation of the Arizona Court of Appeals that "it [is] unlikely that law enforcement officers, lacking any reasonable suspicion of D[W]I, will assign scarce resources to randomly stop motorists on the chance that the officers will develop reasonable grounds to permit them to request the motorist to submit to testing." *Tornabene*, 54 P.3d at 365.

**{33}**    In conclusion, we explain *Maso* in light of our holding in the present case. *Maso* involved a challenge to the procedure giving rise to a license revocation hearing and specifically addressed

9

whether service of an English-language notice of revocation complied with the requirements of due process. Thus, our holding in *Maso*—that the constitutional question of what constituted due process could be decided only by the district court and not by the MVD—has continuing vitality today. Our decision in the present case is distinguished from *Maso* because the present case addresses the substantive issues to be decided by the MVD in a license revocation hearing, not the procedural aspects of such a hearing. Because the Act does not require the MVD to address the validity of the underlying traffic stop and because the exclusionary rule does not apply in revocation proceedings, the constitutionality of the stop need not be decided by any tribunal for purposes of license revocation under the Act.

{34}    Because we conclude that the exclusionary rule is inapplicable in an MVD proceeding, we do not address Driver's argument that the MVD was collaterally estopped from considering the legality of the stop. Even if, as Driver argues, the MVD could not reconsider the ruling of the municipal court, the evidence obtained during the stop would still have been admissible.

**CONCLUSION**

{35}    For the foregoing reasons, we affirm the revocation of Driver's license.

{36}    **IT IS SO ORDERED.**


_____
**CYNTHIA A. FRY, Judge**


**WE CONCUR:**


_____
**JAMES J. WECHSLER, Judge**


_____
**ROBERT E. ROBLES, Judge**

**Topic Index for *Glynn v. N.M. Taxation & Revenue Dep't*, Docket No. 29,453**


| AL | ADMINISTRATIVE LAW AND PROCEDURE |
| --- | --- |
| AL-AA | Administrative Appeal |
| AL-HR | Hearings |
| AL-SE | Sufficiency of Evidence |
| | |
| CP | CIVIL PROCEDURE |
| CP-CE | Collateral Estoppel |
| | |
| CL | CRIMINAL LAW |
| CL-DG | Driving While Intoxicated |
| CL-MH | Motor Vehicle Violations |

**CA**                **CRIMINAL PROCEDURE**
CA-PA          Probable Cause
CA-RL          Revocation of Driver's License

**EV**                **EVIDENCE**
EV-EE          Exclusion of Evidence
EV-SU          Suppression of Evidence